### In the Matters of B–E HOLDINGS, INC. and Bucyrus–Erie Company, Reorganized Debtors.

### Nos. 94–20786, 94–20787.

United States Bankruptcy Court, E.D. Wisconsin.

Jan. 8, 1999.

**MEMORANDUM DECISION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW PERTAINING TO PROOF OF CLAIM NO. 78 OF LUIS VELTZE IN B-E HOLDINGS, INC. AND PROOF OF CLAIM NO. 360 OF LUIS VELTZE IN BUCYRUS-ERIE COMPANY**

RUSSELL A. EISENBERG, Bankruptcy Judge.

A. FACTUAL BACKGROUND [1]

On October 30, 1985, Luis Veltze was shafted, literally. While in a mine in Chile, Luis Veltze received a phone call from his employer informing him that after 15 years of service for Bucyrus,[2] his employment was immediately terminated. Veltze, a United States citizen, was born in Bolivia and came to the United States to complete his education. He was hired in 1970 by Bucyrus as an engineer. Veltze began to have personal differences with a future president of Bucyrus and, as a result of the discord, was transferred in 1982 to Lima, Peru, as a condition for retaining his job. Approximately three years after moving his family and personal belongings to Peru, the person with whom Veltze had personal differences became president of Bucyrus, and Veltze's tenure with the firm ended.

On June 30, 1986, Veltze commenced litigation against Bucyrus in the 17th Civil Court in Lima, Peru, and a default judgment in that action was entered against Bucyrus on March 20, 1992. Bucyrus appealed the Peruvian judgment without success;  it was declared affirmed and final in December 1994. On April 25, 1991, Veltze commenced litigation against Bucyrus in the Circuit Court of Milwaukee County in Milwaukee, Wisconsin. The case was removed by Bucyrus on May 20, 1991, to the United States District Court for the Eastern District of Wisconsin.[3] A jury trial was held before the Honorable Myron L. Gordon, and judgment based on the special verdict of the jury was entered against Bucyrus in the Eastern District of Wisconsin on August 27, 1992.[4] Bucyrus unsuccessfully appealed the jury award to the United States Court of Appeals for the Seventh Circuit which affirmed the District Court's decision. The judgment was subsequently paid by Bucyrus, and a satisfaction was filed with the District Court on December 6, 1993. As of the date of this trial, the Peruvian judgment has not been satisfied.

On February 18, 1994, B-E Holdings, Inc. and Bucyrus-Erie, Inc. each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. The debtors' Second Amended Joint Plan of Reorganization was confirmed on December 2, 1994. The plan of reorganization generally provides that creditors receive 100% of their allowed claims. On October 13, 1994, Veltze filed Proof of Claim No. 78 in B-E Holdings, Inc. and Proof of Claim No. 360 in Bucyrus-Erie Company. The proofs of claim are identical. (Ex. 58; Ex. 59). The bases for the claims include services performed, wages, salaries, compensation, and wrongful discharge. The proofs of claim further indicate that the debt was incurred on November 1, 1985, that a court judgment was obtained on March 20, 1992, and that the claim is an unsecured, nonpriority claim in the sum $489,000 plus interest. On December 5, 1994, the debtors' filed an objection to the proofs of claim filed by Veltze on the basis that the claim asserted had already been paid in full. (Ex. 37A).

---

1. The following facts are based on the record and the documents filed by the parties. The factual background is generally uncontested.

2. At the commencement of trial, the parties agreed that the term "Bucyrus" would refer to both the pre-bankruptcy entities, B-E Holdings, Inc. and Bucyrus-Erie Company, as well as the reorganized debtor, Bucyrus International, Inc. (R. at 13–14).

3. Case No. 91–C–0523

4. On November 2, 1992, the judgment was nominally amended as to the award amount.

The issues before this court are whether and in what amount to allow Veltze's two proofs of claim.

## B. JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the United States District Court for the Eastern District of Wisconsin dated July 10, 1984. Venue rests pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). As a result, this court may enter an appropriate order subject to review under 28 U.S.C. § 158. Due and sufficient notice of this trial was given to all necessary persons and parties. The trial commenced on December 9, 1998, and concluded on December 11, 1998. Veltze was present at the trial and was represented by Attorney Robert Hankel of O'Connor & Willems S.C. and Attorney Michael Dubis of Michael F. Dubis S.C. Bucyrus was represented by Attorney Patrick Howell of Whyte Hirschboeck Dudek S.C.

## C. BURDEN OF PROOF

A proof of claim properly filed in a bankruptcy proceeding constitutes prima facie evidence of the validity and amount of the claim. Fed.R.Bank.P. 3001(f); 11 U.S.C. § 502(a). The burden of going forward then shifts to the party objecting to the claim to produce evidence sufficient to negate the prima facie validity. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3rd Cir.1992). The ultimate burden of persuasion, however, remains on the claimant to prove the validity of the claim by a preponderance of the evidence. *Id. See also In re Tesmetges*, 87 B.R. 263, 270 (Bankr.E.D.N.Y.1988).

The parties stipulated at trial that Proof of Claim No. 78 of Luis Veltze in B–E Holdings, Inc. and Proof of Claim No. 360 of Luis Veltze in Bucyrus–Erie Company were timely filed, and that objections to the proofs of claim were timely filed. (R. at 18–19). The parties then proceeded with the trial on the mutual understanding that the above stipulation shifted the burden back to the Veltze as the claimant seeking to have his claim allowed. *Id.* Based on the findings of fact and conclusions of law discussed below, this court holds that to the extent indicated in this decision, Luis Veltze met his burden to prove the validity of his .claims by a preponderance of the evidence.

## D. THE PERUVIAN JUDGMENT AND PROPER SERVICE

Veltze's proofs of claim are based substantially on the Peruvian default judgment entered against Bucyrus on March 20, 1992. Bucyrus agrees with Veltze that there is a final Peruvian judgment. (R. at 216). The Supreme Court of the United States observed in *Hilton v. Guyot*, 159 U.S. 113, 202–03, 16 S.Ct. 139, 158, 40 L.Ed. 95 (1895):

"We are satisfied that where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice ..., and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or fact."

Bucyrus contests the validity and enforceability of the Peruvian judgment only on the basis that the Peruvian complaint was never properly served on Bucyrus. (Bucyrus Trial Statement at 5–6). The Seventh Circuit Court of Appeals has held that while recognition of foreign judgments is a matter of comity, the United States will not enforce a judgment obtained without the bare minimum requirements of notice. *Ma v. Continental Bank N.A.*, 905 F.2d 1073 (7th Cir. 1990). The notice given must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Therefore, before the Peruvian judgment can be valid and enforceable as a matter of comity, this court must determine whether Bucyrus received sufficient notice of the Peruvian litigation so as to meet the basic due process notions of fair play and substantial justice.

■ For several years Veltze attempted on numerous occasions and using various methods to comply with the Peruvian legal service requirements.[5] The complaint was initially served in 1986 at the address of Bucyrus' alleged legal representative in Peru and was then returned to the court by the alleged legal representative on the basis that the address used was not that of Bucyrus. (R. at 28). The next attempts at notification of the action were in 1987 and 1988 with 5 different publications in the official newspaper of the Peruvian government. (R. at 33; R. at 150). Finally, requisitorial letters through the Peruvian Consulate were used to serve notice of the Peruvian litigation on Bucyrus. (Ex. 131–138; R. at 150). At least eight different citations were sent from the Consul General of Peru in Chicago, Illinois, to Bucyrus in South Milwaukee, Wisconsin. (Ex. 131–138).

Bucyrus had substantial notice of the Peruvian litigation significantly prior to the entering of the default judgment in 1992. Dr. Rey,[6] testified that he was informed by a Bucyrus attorney in 1986, the year the Peruvian action was commenced, that "they [Bucyrus] were in interested in some legal action initiated by Mr. Veltze in Peru." (R. at 280). Lynne Day, the current corporate legal coordinator for Bucyrus International, Inc., testified that Bucyrus had knowledge of legal proceedings in Peru in 1989. (R. at 268). Bucyrus itself submitted as exhibits in this trial numerous citations sent from the Consul General of Peru in Chicago to Bucyrus in Wisconsin notifying it of the Peruvian litigation. (Ex. 131–38). These citations have been date stamped by the Bucyrus law department as received in various months starting in 1989 and continuing until 1991. Id.

Furthermore, this court is impressed with the extensive efforts the Peruvian courts made to ensure that Bucyrus had full and fair notice of the litigation. The Peruvian Superior Court ruled on July 10, 1987, that there was not sufficient proof that the entity originally served with the complaint was in fact Bucyrus' legal representative. (Ex. 10). Later in the same year, the Peruvian court ordered that notification should be attempted through the official newspaper of the Peruvian government. (Ex. 11; R. at 33). In April of 1988, the Peruvian court remained unsatisfied that proper service had been made on Bucyrus and ordered that requisitorial letters be used for notification. Dr. Rey testified that it is a recognized procedure in Peru that when a defendant is not domiciled in Peru, the plaintiff may make notification of the action with requisitorial letters through the Peruvian Consul in the country where the defendant resides. (R. at 299).

This court is not an appellate court in the Peruvian legal system nor may it be used as such. For whatever reason, Bucyrus did not defend itself it in the Peruvian litigation prior to the time the default judgment was entered. In 1993 Bucyrus finally appeared in the case and unsuccessfully attempted to appeal the Peruvian judgment. (Ex. 32; Ex. 33; R. at 309–14, 409). Bucyrus' opportunity to contest proper service was at the time of appeal. Furthermore, Dr. Rey testified that under Peruvian law a judgment that is no longer appealable but has not yet been paid may still be objected to, including on the grounds that there has been a lack of due process. (Ex. 314–16). Therefore, it appears that Bucyrus has had the option to argue the notification issue in Peru at any time during the past five years, even though

---

5. Due to the fact that many of the documents in this case are in the Spanish language and that the English language translations, when available, are generally neither official nor complete, the court must rely heavily on the testimony and credibility of the witnesses at the trial.

6. Dr. Jacobo Rey Elmore, a legal practitioner for over forty-five years in Peru, was called by Bucyrus as a witness, by Veltze as an adverse witness, and recognized by this court as an expert in Peruvian law. Dr. Rey represented Bucyrus in the Veltze matter after the Peruvian judgment and continues to represent Bucyrus in Peru as of the date of this trial.

the initial appeal was rejected, and the judgment had become final. Bucyrus has not done so. This court cannot now be called upon to substitute its judgment for that of a Peruvian court regarding compliance with Peruvian service laws simply because this is the forum that Bucyrus would prefer.

Based upon the foregoing, this court finds that Bucyrus received at least the bare minimum requirements of notice regarding the Peruvian litigation so as to comport with traditional standards of due process. Accordingly, this court holds that the Peruvian judgment is valid and enforceable as a matter of comity.

### E. THE WISCONSIN JUDGMENT AND DUPLICATION

Approximately five months after the default judgment was entered in Peru, a jury sitting in the United States District Court for the Eastern District of Wisconsin determined in a special verdict that Veltze was not terminated from his employment with Bucyrus for misconduct prejudicial to Bucyrus, awarded him $24,906.00 for relocation expenses,[7] $151,950 for consequential damages, and $7,071.39 for out-of-pocket business-related expenses.[8] (Ex. 109). Judgment was entered accordingly ("Wisconsin judgment"). After an unsuccessful appeal to the Seventh Circuit Court of Appeals, Bucyrus satisfied the judgment.

Bucyrus argues as an affirmative defense to Veltze's claims that the Peruvian judgment is duplicative of the satisfied Wisconsin judgment, and because the "law abhors duplicative recoveries," Veltze should not be entitled to any further recovery. (R. at 4–5, 480). Veltze responds that the Peruvian judgment is not duplicative, because even though both lawsuits stem from his termination of employment with Bucyrus, the remedy sought in Wisconsin (a state which uses common law) is based on contract, and the remedy sought in Peru (a nation which uses a civil code) is based on tort and involves Peruvian "social benefits" which are not available in Wisconsin. (R. at 7). This court

must therefore determine whether the Peruvian judgment grants relief which is duplicative of the Wisconsin judgment satisfied by Bucyrus.

The Peruvian judgment awards $87,000 for "lucro cesante" and 1,000 new soles for damages, plus legal interest and court costs. (Ex. 29; R. at 38, 415–17). Bucyrus contends that "lucro cesante" is equivalent to "loss of profits" and amounts to nothing more than lost wages and consequential damages. (Bucyrus Reply Brief at 3). Veltze argues that "lucro cesante" is translated literally into "cessation of income" or "cessation of profits." (R. at 57; Veltze Answering Brief at 4). According to Veltze, "lucro cesante" includes neither consequential damages, lost wages, nor moving expenses but instead refers to Peruvian "social benefits." (R. at 193, 433).

Under the Civil Code of Peru, employees earn rights to special "social benefits" which include protection when terminated from employment without proper notice and just cause. (R. at 184–85). "Social benefits" differ from lost wages in that "social benefits" are earned for services performed prior to the termination while lost wages have not yet been earned at the time of termination; they would have been earned but for the termination. (R. at 193–94). The sanction for an employer in the event they improperly terminate an employee who has worked in Peru for three years is the equivalent of twelve months of the employee's salary. (R. at 185–86, 222, 397–401). Such a sanction applies even if the employee gains employment elsewhere immediately after the termination. (R. at 194–95, 222–23, 398).

This court finds that the $87,000 portion of the Peruvian judgment is a tort award for "social benefits" under the Peruvian Civil Code and is not duplicative of the Wisconsin judgment. There is no double recovery under the unique facts in this case because the Peruvian judgment compensates Veltze based on a Peruvian civil law cause of action which is not recognized under the common law of Wisconsin. The remedies sought in

---

7. This figure appears was stipulated to by the parties. (Ex. 109).

8. This figure was later reduced to $4,979.00. (Ex. 112).

the Wisconsin litigation were based solely on breach of contract, while the Peruvian complaint includes Peruvian Civil Code tort remedies. (Ex. 1; Ex. 106). Furthermore, the Peruvian courts specifically used a Peruvian Civil Code tort statute,[9] rather than a contract statute, to determine the interest applicable to the Peruvian judgment. (Ex. 51; R. at 232). It is much more than merely a simple coincidence that the $87,000 award in the Peruvian judgment is equal to the "social benefits" sanction amount under Peruvian law of twelve months of Veltze's salary.[10] (R. at 399–401). Even Bucyrus' own Peruvian appellate briefs repeatedly state that the Peruvian litigation is based on indemnification for "beneficios sociales" or "social benefits." (Ex. 32; Ex. 44; Ex. 48).

Again, this court is not an appellate court in the Peruvian legal system. Bucyrus has never raised the duplication issue in Peru nor has it filed a motion in Peru to have the Peruvian judgment declared satisfied. Bucyrus did file a motion in the District Court in the Eastern District of Wisconsin seeking an order declaring the Peruvian judgment satisfied. (Ex. 34A; R. at 44). On March 15, 1994, Judge Gordon denied the motion on several grounds, including on the basis "that the proper forum for Bucyrus–Erie to challenge the enforceability of the Peruvian judgment is in the Peruvian court which entered that judgment ..." (Ex. 34A at 6). Furthermore, the Peruvian litigation, the Peruvian judgment, and the concern over duplication were never raised by Bucyrus during the Wisconsin jury trial, in the motions Bucyrus filed directly after the trial to obtain relief from the verdict, nor on appeal to the Seventh Circuit. (R. at 43–44). This court cannot allow its limited jurisdiction to be manipulated into forum-shopping by the Bucyrus.

Accordingly, the $87,000 portion of the Peruvian judgment is allowed. Due to the fact that legal interest was specifically awarded in the Peruvian judgment, appropriate pre-petition interest computed by the Peruvian court on the $87,000 is also allowed. (Ex. 29; R. at 38). Using the tables which were completed by an expert appointed by the Peruvian Court specifically to calculate interest on Veltze's Peruvian judgment, the total principal and interest through January 31, 1994,[11] on the $87,000 award is $213,-040.99.[12]

As to the second award in the Peruvian judgment, Veltze concedes that the 1,000 new soles is a recovery for consequential damages. (R. at 433). Accordingly, this court finds that the 1,000 new soles is duplicative of the consequential damages awarded in the Wisconsin judgment and is, therefore, disallowed.

## F. UNCLEAN HANDS AND VIOLATION OF THE AUTOMATIC STAY

As a second affirmative defense to Veltze's claims, Bucyrus alleges that Veltze has "unclean hands" due to automatic stay violations and should accordingly be denied all relief.[13] (Bucyrus Trial Brief at 10). Veltze admits that he has to some degree violated the

---

9. Article 1985 of the Civil Code of Peru allows tort recoveries to accrue interest from the date of termination. (Ex. 51).

10. Veltze's monthly salary in 1985 after working for three years in Peru was $7,250.00. (R. at 399–401).

11. January 31, 1994, is chosen so as to assure that no post-petition interest is included in the amount. As previously stated, the petitions in bankruptcy were filed on February 18, 1994. (R. at 234).

12. The court is aware that the allowed interest is relatively large compared with the principal sum. Dr. Rey, Bucyrus' own witness, confirmed in his testimony, however, that $213,040.99 is the correct total sum of principal and interest through January 31, 1994. (R. at 234–35). Neither party has questioned the accuracy of the tables which were received into evidence as Exhibit No. 53 and have been used to determine the applicable interest.

13. In pleadings filed with the court, Bucyrus has made reference to further "unclean hands" allegations against Veltze such as "inequitable conduct." Bucyrus has also put forward additional affirmative defenses and issues of law including "equitable estoppel" and "judicial estoppel" in its filed documents. While this court is aware of the plethora of defenses and issues raised at various times by Bucyrus, at trial there was a significant lack of argument, testimony, and evidence presented thereon. Accordingly, this court shall address only those defenses and issues which were pursued at trial and are in any way dispositive of Veltze's claims.

automatic stay but apologetically argues that he did so without understanding its meaning. (R. at 474–77). A determination must therefore be made as to the appropriate applicable sanction for the violation.

This court agrees with Attorney Dubis when he stated at trial that "the automatic stay is the backbone of the bankruptcy courts" and that "without the automatic stay . . . it's like having laws without any enforcement ability." (R. at 474). Congress was aware of the importance of the automatic stay and provided for sanctions when a violation of the stay occurred. 11 U.S.C. § 362(h) provides for actual damages, including costs and attorney's fees, as well as punitive damages in appropriate circumstances.

■ There is no doubt that Veltze's requests to the Peruvian court for interest and cost calculations were a violation of the automatic stay. Veltze never executed on the Peruvian judgment nor seized any of Bucyrus' property, however. (R. at 112, 192, 411, 434). This court finds Veltze's testimony credible when he stated that he was not fully aware of the meaning of the automatic stay until spring of 1998 when Attorney Howell advised him thereof. (R. at 54, 113–14, 434–35). Neither Bucyrus nor Dr. Rey informed the Peruvian court that proceeding with interest or cost calculations in Peru would be a violation of the automatic stay. In fact, no motion appears to have ever been brought in Peru, the District Court for the Eastern District of Wisconsin, or even in the Bucyrus bankruptcy cases for sanctions for the violation of the automatic stay or to prevent additional violations of the stay. Given these facts, this court finds that punitive damages would be inappropriate in this case.

■ As to actual damages, Bucyrus undoubtedly incurred costs and fees in responding to Veltze's requests to the Peruvian court for interest and cost calculations. Bucyrus did not, however, quantify its damages for the court. Since this court has neither general nor specific figures with which a sanction amount may be computed, the appropriate and most equitable solution is to equate Bucyrus' damages to the costs Veltze was awarded in the Peruvian judgment. *See In re Longardner & Assoc., Inc.*, 855 F.2d 455, 462 (7th Cir.1988). Accordingly, as a sanction for violation of the automatic stay, the element of Veltze's claims pertaining to the Peruvian awarded courts costs shall be disallowed.

## G. INCORRECT PROOF OF CLAIM

■ Both parties have raised the issue that Veltze's proofs of claim were incorrect and overstated. This practice, although not uncommon among creditors, should not be encouraged. Based on the unique facts in this case, however, this court finds the overstatement to be minimal and not significantly prejudicial to Bucyrus so as to warrant sanctions. Bucyrus was not misled or surprised by the amount claimed by Veltze. Prior to the trial, Veltze had already conceded that the final figure was somewhat exaggerated. (R. at 465–67). Furthermore, the proofs of claim did not rely solely on the Peruvian judgment. Veltze lists additional bases for the claims including services performed, wages, salaries, compensation, and wrongful discharge. (Ex. 58; Ex. 59). In calculating his claim, Veltze added both estimated compounded interest (which is frequent in Peru) and post-petition interest to the judgment amount. He additionally included his approximated Peruvian attorney's fees, attorney's fees for future representation in the bankruptcy proceedings, and costs. (R. at 465–67). The sum of these figures appears to be reasonably close to the total amount Veltze listed on his proofs of claim, thereby making sanctions inappropriate in this case.

## H. CONCLUSION

Based on all of the above findings of fact and conclusion of law, Proof of Claim No. 78 of Luis Veltze in B–E Holdings, Inc. shall be allowed in the sum of $213,040.99 and Proof of Claim No. 360 of Luis Veltze in Bucyrus–Erie Company shall be allowed in the sum of $213,040.99. Although the claim shall be allowed in each case, because the cases are jointly administered and there is only one debt, there shall be only one recovery in the total sum of $213,040.99.

This decision shall constitute findings of fact and conclusions of law pursuant to Fed.

R.Bankr.P. 7052 and Fed.R.Civ.P. 52. A separate order consistent with this decision shall be signed on this date.