Yan Carlos RAVELO MONEGRO; Nelson Rolando Gonzalez Sosa; Franklin Alvares Galvez; Rafael Micael De La Cruz; Francisco De Los Santos Heredia; Porfirio Alfred Vasquez Mota; Manuel Acevedo; Angel Esteban Guillen Solano; Carlos Celedonio Sujilio;

Edelmiro Reyes Santana; Ignacio Henriquez De La Rosa; Fernando Romero; Tulio Miguel Lizardo Nolosco, Plaintiffs–Appellants,

v.

Luis ROSA; Jack Hiatt; San Francisco Baseball Associates, L.P., dba San Francisco Giants, Defendants–Appellees.

No. 98–16846.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1999

Filed May 3, 2000

David Becht and Daniel Fuchs, Adams Nye Sinuni Walker, San Francisco, California, for the plaintiffs-appellants.

Nancy E. Pritikin, Philip L. Ross, and Tram Anh–Frank, Littler Mendelson, San Francisco, California, for defendants-appellees Jack Hiatt and San Francisco Baseball Associates, L.P.

Before: BRIGHT,[1] PREGERSON and W. FLETCHER, Circuit Judges.

W. FLETCHER, Circuit Judge:

Plaintiffs brought suit in the United States District Court for the Northern District of California against the San Francisco Baseball Associates ("the Giants"), the Giants' Latin America scout, Luis Rosa, and the Giants' Minor League Coordinator, Jack Hiatt, for violations of federal and state law including sexual harassment, sexual battery, wrongful termination, fraud and conversion. The district court dismissed plaintiffs' action on the ground of forum non conveniens, concluding that the Dominican Republic was the better forum for the suit. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

I

The thirteen plaintiffs are aspiring professional baseball players who live in the Dominican Republic. When they were be-

---

1. Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

tween sixteen and twenty years old, they were recruited by Luis Rosa, the Giants' former Latin America scout. At Rosa's instigation, each player signed a seven-year minor league contract with the Giants. Although the contracts initially provided that all the plaintiffs would play baseball for the San Pedro Giants in the Dominican Republic, the contracts could be assigned, and the players transferred, to minor or major league teams in the United States. Underscoring this potential for transfer, many of the contracts contained addenda stating salaries in Bellingham, Washington, Scottsdale, Arizona, and Shreveport, Louisiana.

Playing for the San Francisco Giants or some other United States team was the plaintiffs' common goal. All thirteen plaintiffs claim that Rosa expressly conditioned their continued employment and/or reassignment to United States teams upon their submitting to his sexual advances, and that Rosa appropriated part of their earnings or signing bonuses for his own use. They also allege that the Giants' management knew or had reason to know of Rosa's misconduct. In April 1998, plaintiffs initiated this suit against the Giants, Rosa and Hiatt.

In June 1997, plaintiffs had brought substantially similar allegations to the attention of authorities in the Dominican Republic. As a result of their complaints, a combined criminal and civil suit against the Giants and Rosa is now pending in the Dominican Republic. Noting the pendency of this "parallel" proceeding, the defendants moved in June 1998 to dismiss plaintiffs' complaint on the alternative grounds of forum non conveniens and abstention. The district court granted the defendants' motion on the ground of forum non conveniens. Plaintiffs timely appeal.

## II

■ A forum non conveniens determination "is committed to [the] sound discretion of the trial court," and "may be reversed only when there has been a clear abuse of discretion." *Creative Tech., Ltd. v. Aztech Sys. Pte Ltd.*, 61 F.3d 696, 699 (9th Cir.1995). A district court may abuse its discretion by relying on an erroneous view of the law, by relying on a clearly erroneous assessment of the evidence, or by striking an unreasonable balance of relevant factors. *See K.V. Mart Co. v. United Food & Commercial Workers Int'l Union, Local 324*, 173 F.3d 1221, 1223 (9th Cir.1999); *Creative Tech.*, 61 F.3d at 699.

## III

■ A threshold issue is whether, under *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a forum non conveniens motion in federal court is governed by federal or state law. The Supreme Court expressly avoided deciding this issue in *Piper Aircraft v. Reyno*, 454 U.S. 235, 248 n. 13, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Since *Piper*, however, several circuits have held that a forum non conveniens motion in federal court is governed by federal law. *See Rivendell Forest Prods. Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 992 (10th Cir.1993); *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis, Ltda.*, 906 F.2d 45, 50 (1st Cir.1990); *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1159 (5th Cir.1987) (en banc), *vacated on other grounds*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *prior opinion reinstated in relevant part*, 883 F.2d 17 (5th Cir.1989); *Sibaja v. Dow Chem. Co.*, 757 F.2d 1215, 1219 (11th Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985). *But see In Re Air Crash Disaster*, 821 F.2d at 1180–86 (Higginbotham, J., concurring in the judgment) (arguing that state forum non conveniens law should apply to diversity actions in federal court); *Weiss v. Routh*, 149 F.2d 193, 195 (2d Cir.1945) (L. Hand, J.) (stating that state law should control a federal court's assertion of jurisdiction). We join these circuits and hold that federal rather than state law governs. We agree with the Fifth Circuit's conclusion that

"the interests of the federal forum in self-regulation, in administrative independence, and in self-management" are more important than any interest in uniformity between the federal and state forums in a single state. *In re Air Crash Disaster,* 821 F.2d at 1159. Our conclusion is reinforced by the Supreme Court's statement in *American Dredging Co. v. Miller,* 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994), that "the doctrine [of forum non conveniens] is one of procedure rather than substance." *Id.* at 453, 114 S.Ct. 981 (upholding the application in state court of a state forum non conveniens rule in a Jones Act admiralty case).

We note, however, that the result in this case would likely be the same if we applied California's law of forum non conveniens. *See* Cal.Civ.Proc.Code § 410.30. When the Supreme Court reserved the *Erie* issue in *Piper,* it observed that California and federal forum non conveniens laws were "virtually identical." *Piper,* 454 U.S. at 249 n. 13, 102 S.Ct. 252. While this statement was almost certainly untrue when made, *see* 2 B. Witkin, *California Procedure* Jurisdiction §§ 304–306 (3d ed.1985); *Holmes v. Syntex Labs.,* 156 Cal.App.3d 372, 202 Cal. Rptr. 773 (1984), it appears to have become true since then. *See Stangvik v. Shiley, Inc.,* 54 Cal.3d 744, 1 Cal.Rptr.2d 556, 819 P.2d 14 (Cal.1991).

## IV

There are two types of cases in which forum non conveniens dismissals have been deemed appropriate in federal court. In the first type, now rarely encountered, a foreign or domestic plaintiff chooses a forum with little or no relation to either the defendant or the action in order to disadvantage the defendant. *See, e.g., Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). In the second type, now more commonly encountered, a foreign plaintiff chooses the home forum of an American defendant in an action that has little or no relation to the United States in order to take advantage of more favorable American procedural or substantive rules. *See, e.g., Piper,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419.

The first type of case was common in federal courts before the adoption of 28 U.S.C. § 1404(a) in 1948. For example, in *Gilbert,* decided just before the passage of § 1404(a), a Virginia plaintiff sued Pennsylvania-based Gulf Oil in the Southern District of New York based on Gulf's allegedly negligent delivery of gasoline and an ensuing explosion at Gilbert's Virginia warehouse. *Gilbert,* 330 U.S. at 502–03, 67 S.Ct. 839. In upholding a forum non conveniens dismissal, the Court articulated a number of private and public interest factors relevant in assessing whether "exceptional circumstances" justified a forum non conveniens dismissal. *Id.* at 504, 67 S.Ct. 839. "Private interest factors" included the relative ease of access to sources of proof, the availability of compulsory process for unwilling witnesses, the comparative cost of obtaining willing witnesses, the possibility of a view of any affected premises, the ability to enforce any judgment eventually obtained, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508, 67 S.Ct. 839. "Public interest factors" included court congestion, the unfairness of burdening citizens in an unrelated forum with jury duty, the interest in having localized controversies decided at home, the interest in trying the case in a forum familiar with the applicable law, and the interest in avoiding unnecessary conflicts of laws. *See id.* at 508–09, 67 S.Ct. 839.

■ Rather than requiring dismissal and refiling of a suit where the alternative forum is another federal court, § 1404(a) now allows transfer of a case from one federal district court to another "for the convenience of parties and witnesses in the interest of justice." 28 U.S.C. § 1404(a). Section 1404(a) thus serves as a statutory substitute for forum non conveniens in federal court when the alternative forum is

within the territory of the United States. The doctrine of forum non conveniens survives in federal court only when the alternative forum is in a foreign country. As a consequence, a forum non conveniens motion in a *Gilbert*-type case is now rare, for foreign plaintiffs seeking to avoid their home forums by filing in the United States do not typically sue in a forum with little or no relation to either the defendant or the action. Indeed, foreign plaintiffs typically bring such suits in the quintessentially convenient forum for the defendant—the defendant's home forum.

In *Piper*, the Supreme Court adapted the analytic structure of *Gilbert* to take into account the special characteristics of a case in which a foreign plaintiff sues an American defendant in its home forum. *Piper* arose out of the crash of a small plane in the Scottish highlands that killed the Scottish pilot and five Scottish passengers. Gaynell Reyno was appointed as administratrix of the estates of several of the passengers for the purpose of filing a wrongful death action in California state court against Piper Aircraft and Hartzell Propeller, the manufacturers of the plane and its propeller. Defendants removed the case to federal district court in California under 28 U.S.C. § 1441. Pursuant to 28 U.S.C. §§ 1404(a) and 1406(a),[2] defendants then secured its transfer to the Middle District of Pennsylvania, the home of Piper's manufacturing plant.

Even though the action was now brought in Piper's home forum, the Pennsylvania district court granted defendants' motion to dismiss under forum non conveniens, finding that a combination of the public and private interest factors derived from *Gilbert* overwhelmingly favored the Scottish forum. The decedents were Scottish; all the real plaintiffs in interest and witnesses were Scottish; trial would be aided by local familiarity with Scottish geography; and crucial evidence in Scotland was beyond the reach of the district court's compulsory process. Further, there was a significant risk of inconsistent verdicts because there was a separate action filed in Scotland, and defendants Piper and Hartzell could not reduce or eliminate that risk by impleading as third-party defendants the charter company and the estate of the pilot. Finally, the district court stressed that it was unfamiliar with Scottish law, and that since different law applied to different defendants, a trial in the United States would be "hopelessly complex and confusing." *See Reyno v. Piper Aircraft Co.*, 479 F.Supp. 727, 732–34 (M.D.Pa. 1979).

██ In sustaining the district court's dismissal, the Supreme Court generally endorsed the district court's reliance on the *Gilbert* factors, but gave special attention to two factors peculiar to a case brought in the United States against American defendants by a foreign plaintiff. First, the possibility of less favorable substantive law in the plaintiff's home forum "should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry."[3] *Piper*, 454 U.S. at 247, 102 S.Ct. 252. Second, in contrast to the strong presumption in favor of a domestic plaintiff's forum choice, "a foreign plaintiff's choice deserves less deference." *Id.* at 256, 102 S.Ct. 252.

### V

██ This case is unlike *Piper* in a number of respects. First, unlike *Piper*, plaintiffs' chosen forum is more than merely the

---

**2.** The suit against Hartzell was transferred under § 1406 rather than § 1404(a) because of a lack of personal jurisdiction over Hartzell in California.

**3.** Note that the difference in substantive law will not be relevant to transfer under 28 U.S.C. § 1404(a), the statutory replacement for domestic forum non conveniens in federal courts. A transfer under § 1404(a) results in a change of courtrooms, not a change of law. *See Van Dusen v. Barrack*, 376 U.S. 612, 636–37, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 524–25, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990).

American defendants' home forum. It is also a forum with a substantial relation to the action. Plaintiffs allege that the Giants, through their agent, Rosa, solicited and entered into contracts with the plaintiffs. Based on these contracts, plaintiffs formed the legitimate expectation that if they demonstrated sufficient skill they would be able to play professional baseball in the United States, possibly in San Francisco for the Giants themselves.

Second, unlike *Piper*, there are no possible co-defendants or third-party defendants who could not be made to appear in the American forum. Indeed, quite the opposite problem exits in this case: If this suit were dismissed in favor of a suit in the Dominican Republic, it is not clear that defendant Rosa would appear, or could be compelled to appear, in that forum. Although "the relative ability of the forums to compel the attendance of significant unwilling witnesses at trial" is an important private interest factor, *see* 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.74[3][c][iii] (3d ed.1997), the district court did not accord this factor any weight because Rosa "agreed" to participate in legal proceedings in the Dominican Republic. The plaintiffs expressed concern that Rosa's "agreement" was feigned. Indeed, in their Rule 60(b) motion in the district court for reconsideration of the dismissal, plaintiffs produced affidavits from two people who recount that Rosa told them he did not plan to return to the Dominican Republic where he faces possible imprisonment. Despite this concern, the district court did not make its forum non conveniens dismissal contingent upon Rosa's participation in the proceeding in the Dominican Republic, either by so ordering in its original dismissal or by amending its dismissal order in response to plaintiffs' Rule 60(b) motion.

Third, unlike *Piper*, there is no showing that access to proof—even aside from Rosa's testimony—would be easier in the Dominican Republic. The Giants asserted in their motion to dismiss in the district court that "the costs of bringing witnesses to California would be significantly greater than litigating the matter in the Dominican Republic," and that "United States citizens have much easier access to the Dominican Republic than Dominican Republic citizens have to enter the United States." But there is no evidence to support these assertions. Indeed, the only evidence before the district court was a declaration tending to show the opposite, stating that visas would be readily available to plaintiffs.

In *Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir.1983), this court noted that "the standard to be applied [to a motion for dismissal on the ground of forum non conveniens] is whether ... defendants have made a clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent...." *Id.* at 1410. The record in this case indicates the district court misunderstood this standard: rather than treating forum non conveniens as an exceptional tool to be employed sparingly, the district court perceived it as a doctrine that compels plaintiffs to choose the optimal forum for their claim. We recognize that the Supreme Court in *Piper* held that "a foreign plaintiff's [forum] choice deserves less deference" than the forum choice of a domestic plaintiff. But less deference is not the same thing as no deference. *See Lony v. E.I DuPont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir.1989). We hold that it was an abuse of discretion for the district court to deny plaintiffs their choice of federal district court in San Francisco as their forum.

## VI

The decision of the district court is therefore REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.