# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIVENDI SA; VIVENDI HOLDING I
CORP.,

       *Plaintiffs-Appellants,*

       v.

T-MOBILE USA INC.; T-MOBILE
DEUTSCHLAND GMBH T-MOBILE
INTERNATIONAL AG; DEUTSCHE
TELEKOM AG; ZYGMUNT SOLORZ-
ZAK,

       *Defendants-Appellees.*

No. 08-35561

D.C. No.
2:06-cv-01524-JLR

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted
August 3, 2009—Seattle, Washington

Filed November 2, 2009

Before: Harry Pregerson, John T. Noonan, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

---

**COUNSEL**

Lanny J. Davis, Garret G. Rasmussen, Adam W. Goldberg, Orrick, Herrington & Sutcliffe LLP, Washington, D.C., for the appellants.

Samuel A. Keesal, Jr., Ben Suter, Robert J. Bocko, Keesal, Young & Logan, San Francisco, California, for the appellees.

---

**OPINION**

BEA, Circuit Judge:

This appeal concerns a French corporation's allegations that a German corporation and a Polish billionaire colluded fraudulently in Europe to wrest control of a Polish wireless telephone company from the French corporation. The French corporation sought a remedy[1] for these alleged wrongs in—of all places—the United States District Court for the Western

---

[1]The French corporation, Vivendi S.A., also has initiated litigation and arbitration proceedings in Poland, Austria, France, Germany, Switzerland, and the United Kingdom related to this same alleged fraud.

District of Washington. The district court dismissed the case on the ground of *forum non conveniens*. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## The Parties

Vivendi S.A. and Vivendi Holding I Corp.[2] (Vivendi Holding) (collectively Vivendi) appeal the district court's order dismissing their complaint on *forum non conveniens* grounds. Vivendi S.A. is a French corporation. Vivendi Holding is a Delaware corporation.

---

[2]Vivendi S.A. alone filed the notice of appeal in this case. On September 29, 2008, well after the thirty-day deadline for filing a notice of appeal, *see* Fed. R. App. P. 4(a)(1), Vivendi S.A. filed a motion to amend the case caption to add Vivendi Holding as an appellant. Vivendi contends that its timely-filed Civil Appeals Docketing Statement (CADS), which lists both Vivendi S.A. and Vivendi Holding, gave the parties notice that Vivendi Holding also intended to appeal.

Federal Rule of Appellate Procedure 3(c)(1)(A) mandates that the notice of appeal "specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with terms such as 'all plaintiffs,' 'the defendants,' 'the plaintiffs A, B, et al.,' or 'all defendants except X.' " Vivendi S.A.'s notice of appeal makes no mention of Vivendi Holding, and no Ninth Circuit case law holds that the CADS suffices to give notice of an intent to appeal.

However, the Supreme Court has held that courts should "liberally construe the requirements of Rule 3. Thus, when papers are technically at a variance with the letter of Rule 3, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Smith v. Barry*, 502 U.S. 244, 247 (1992) (holding that the filing of an opening brief within the time period for filing a notice of appeal could constitute notice of appeal). Here, the CADS was filed simultaneously with the notice of appeal, it listed Vivendi Holding as a plaintiff, and it refers to the principal issues the "plaintiffs" propose to raise on appeal. *Cf.* Fed. R. App. P. 3(c)(1)(A) (permitting a notice of appeal to identify the parties by referring to them collectively). Therefore, we grant Vivendi S.A.'s motion to add Vivendi Holding as an appellant.

Vivendi filed suit against Deutsche Telekom AG, T-Mobile International AG, T-Mobile Deutschland GmbH, T-Mobile USA, Inc. (collectively T-Mobile), and Zygmunt Solorz-Zak (Solorz) in the Western District of Washington, asserting a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and a claim for common-law fraud. Deutsche Telekom, T-Mobile Deutschland, and T-Mobile International are German corporations. T-Mobile USA is a Delaware corporation with its principal place of business in Bellevue, Washington. Solorz is a Polish citizen.

## Factual and procedural background

The facts in this case, spanning ten years of European business transactions and litigation, could be difficult to follow. Therefore, we relate here only those facts essential to the disposition of this appeal.[3]

## I. The battle for control of Polska Telefonia

In 1999, both T-Mobile Deutschland and Vivendi S.A. took an interest in the Polish wireless telephone company, Polska Telefonia Cyfrowa Sp. z o.o. (Polska Telefonia). At the time, Polish law precluded foreign investors from holding more than 49% of the shares of any Polish telecommunications company.[4] The German company T-Mobile Deutschland, which at the time held a 22.5% interest in Polska Telefonia, acquired an additional 26.5% interest from other shareholders, for a total of 49%.

While T-Mobile Deutschland was buying up shares, so was Vivendi S.A., a French corporation. To facilitate its intended takeover of Polska Telefonia, Vivendi S.A. partnered with a Polish company, Elektrim S.A. Vivendi S.A. and Elektrim

---

[3]Because this is an appeal from an order granting a motion to dismiss, the facts are taken from Vivendi's Third Amended Complaint.

[4]The Polish government terminated this limitation in 2001.

established a joint venture that operated through a holding company called Telco. Over time, Vivendi S.A. invested $2.5 billion to acquire a 51% interest in Telco. Pursuant to the joint venture agreement, Elektrim transferred its 37.1% interest in Polska Telefonia to Telco, along with an additional interest it acquired from other shareholders, for a total of 51% of the Polska Telefonia stock.

On December 7, 2000, T-Mobile Deutschland initiated arbitration against Elektrim in Vienna. T-Mobile Deutschland claimed that Elektrim's transfer of its shares to Telco materially breached Polska Telefonia's shareholder agreement.[5] The shareholder agreement bound all Polska Telefonia shareholders and provided certain shareholders, including T-Mobile Deutschland, the option to buy the shares of any shareholder who materially breached the agreement.

In 2003, while the arbitration was pending, Solorz purchased a controlling interest in Elektrim, which at the time held a joint venturer's interest in Telco's Polska Telefonia shares. Vivendi alleges that Solorz secretly agreed to help T-Mobile Deutschland gain control of Polska Telefonia. To this end, Elektrim terminated its joint venture agreement with Vivendi S.A. Vivendi S.A. and Elektrim, however, retained their joint ownership of Telco.

On November 26, 2004, the Vienna arbitration panel held that Elektrim's transfer of its shares to Telco was ineffective because Elektrim transferred its shares to Telco without the consent of all of the members of Polska Telefonia's Board of Directors, as required by the Polska Telefonia shareholder agreement. The panel further held that, if Elektrim did not recover its shares from Telco within two months, Elektrim

---

[5]T-Mobile Deutschland alleged that the transfer of Elektrim's Polska Telefonia shares to Telco constituted a material breach of the shareholder agreement because the transfer violated Poland's limit on foreign ownership of telecommunications companies.

would be in material breach of the shareholder agreement, thus triggering T-Mobile Deutschland's options to buy Elektrim's shares. A Warsaw Regional Court granted Elektrim's petition for recognition of the arbitral award.

Relying on this recognition order, T-Mobile Deutschland and Elektrim took over the Polska Telefonia management board. Elektrim and T-Mobile Deutschland then secured an order from the Warsaw Regional Court changing the Polish government's official share register to show Elektrim alone, and not Vivendi S.A., as the owner of the Telco shares.

In February 2005, Everest, a Miami-based company, purchased Elektrim bonds. By this time, however, Vivendi alleged Solorz used his controlling interest in Elektrim to begin stripping Elektrim of its assets. Elektrim failed to make required payments on the bonds, and the trustee for the bonds filed a petition in Polish court to put Elektrim into bankruptcy to prevent Solorz from further reducing Elektrim's assets. The bankruptcy court issued an injunction barring any transfer of Elektrim's Polska Telefonia shares.[6]

By May 2005, Elektrim had failed to recover its Polska Telefonia shares from Telco, so T-Mobile Deutschland again initiated arbitration in Vienna. This time, T-Mobile Deutschland sought a declaration that it was entitled to exercise its option to buy Elektrim's shares. While the arbitration was pending, Deutsche Telekom approached Vivendi S.A., offering to negotiate an agreement that would allow Vivendi S.A. to recoup much of its $2.5 billion investment in Polska Tele-

---

[6]Vivendi filed a request for judicial notice of an injunction from the London Court of International Arbitration barring Elektrim from transferring its Polska Telefonia shares. We deny this request because the injunction does not "have a direct relation to this appeal." *See In re Heritage Bond Litig.*, 546 F.3d 667, 670 n.1 (9th Cir. 2008). Whether Elektrim or Telco is the legitimate owner of the Polska Telefonia shares does not affect the analysis of the public and private interest in having this action proceed in the Western District of Washington.

fonia.[7] Before any agreement was reached, the Vienna arbitration panel held that T-Mobile Deutschland could exercise its option to buy Elektrim's shares.

On August 28, 2006, despite the Polish bankruptcy court's injunction barring Elektrim from transferring its Polska Telefonia shares, Elektrim transferred its shares to T-Mobile Deutschland for over 600 million euros. In light of the influx of cash to Elektrim, the trustee for the bonds withdrew the bankruptcy petition. This allowed Solorz to resume stripping Elektrim's assets, which prevented Everest from maximizing the value of the bonds.[8]

Vivendi has initiated at least twenty litigation and arbitration actions across Europe to recover its investment in Polska Telefonia.

## II.   The instant litigation

On October 23, 2006, Vivendi S.A. filed a complaint against T-Mobile and Solorz in the U.S. District Court for the Western District of Washington. T-Mobile filed a motion to dismiss based on, among other grounds, *forum non conveniens* on May 17, 2007.

Less than two weeks after T-Mobile filed its motion to dismiss, Vivendi Holding acquired from Everest its Elektrim bonds and all claims relating to the bonds. Vivendi S.A. then sought leave to amend its complaint to add Vivendi Holding

---

[7]Vivendi contends one settlement conversation took place "over U.S. wires."

[8]We deny Vivendi's request for judicial notice of the July 20, 2009, decision of the Royal Courts of Justice in London, which awarded damages to Elektrim bondholders, including Vivendi Holding (which acquired Everest's bonds seven months after this litigation began). Whether the Elektrim bondholders were able to maximize the return on their bonds does not make litigation in the Western District of Washington more or less convenient. *See In re Heritage Bond Litig.*, 546 F.3d at 670 n.1.

as a plaintiff. The district court granted Vivendi S.A.'s motion to amend its complaint, and Vivendi filed its Third Amended Complaint on August 1, 2007. T-Mobile again filed a motion to dismiss the complaint, as did Solorz. The district court held a hearing on the motions, and, on June 5, 2008, the district court dismissed Vivendi's complaint on *forum non conveniens* grounds, concluding that Poland was an adequate alterative forum.⁹ Vivendi S.A. timely appealed.

## Standard of Review

We review claims of error in a trial court's *forum non conveniens* dismissal for "clear abuse of discretion." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 511 (9th Cir. 2000). "A district court may abuse its discretion by relying on an erroneous view of the law, by relying on a clearly erroneous assessment of the evidence, or by striking an unreasonable balance of relevant factors." *Id.*

## Analysis

**[1]** To grant a motion to dismiss on *forum non conveniens* grounds, a district court must determine "(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Vivendi contends the district court abused its discretion (1) by affording insufficient deference to Vivendi's choice of forum and (2) by unreasonably balancing the public and private interest factors.

---

⁹Vivendi does not contend on appeal that the district court abused its discretion when it concluded Poland was an adequate alternative forum.

## I.   The district court did not err by granting little deference to Vivendi's choice of forum.

**[2]** Vivendi contends the district court gave insufficient deference to its choice of forum. Under our law, foreign plaintiffs are entitled to less deference than are plaintiffs who file suit in their home forums. *See Piper*, 454 U.S. at 256. Vivendi S.A., a French company, filed this action related to European transactions in a forum far from its home. Therefore, the district court did not abuse its discretion when it afforded Vivendi S.A.'s choice of forum "little deference."

**[3]** Moreover, this court's review of a district court's *forum non conveniens* determination is highly deferential. *See id.* at 257 ("It may be reversed only where there has been a clear abuse of discretion[.]"). In cases concerning foreign plaintiffs, this court rarely has reversed a district court's grant of a motion to dismiss for *forum non conveniens*. *See, e.g.*, *Ravelo Monegro*, 211 F.3d at 514.

**[4]** The only allegations Vivendi asserts that connect this action to the United States are the use of "U.S. wires" in various conversations and e-mail exchanges between the parties and the appointment to Polska Telefonia's board of Thomas Winkler, the Chief Financial Officer of T-Mobile International, a German corporation, "who upon information and belief conducted business in the United States at T-Mobile USA's Seattle, Washington headquarters." Notably, Vivendi has alleged no facts that show that Winkler took any action from Seattle—or, for that matter, from anyplace else— specifically with respect to T-Mobile's allegedly fraudulent acquisition of Polska Telefonia. Instead, these allegations are incidental to the substance of Vivendi's complaint and involve only tenuous connections to the United States. These allegations do not establish plausibly that a U.S. entity participated in the alleged fraud and thus fail to show that the plaintiffs' fraud claims are connected to a U.S. business entity. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Therefore, the district court did not err when it granted Vivendi S.A.'s choice of forum little deference.

[5] Likewise, the choice of forum of Vivendi S.A.'s American co-plaintiff, Vivendi Holding, deserves reduced deference because the district court found that Vivendi had engaged in forum shopping. Vivendi alleges that Vivendi Holding, as the assignee of Everest's purchase of Elektrim's bonds, was prevented from maximizing its interest in the Elektrim bonds. Everest's Elektrim bonds, however, are related only incidentally to the fraud Vivendi alleges T-Mobile and Solorz colluded to commit against Vivendi S.A. In short, Elektrim was required to pay bondholders, including Everest, an "equity kicker" equal to 25% of the net asset value of Elektrim in excess of 160 million euros. Solorz began stripping Elektrim's assets, however, which undermined the value of the equity kicker. The injunction issued by the bankruptcy court halted this asset-stripping and thus preserved the value of the equity kicker, but when Elektrim—fraudulently, so Vivendi alleges—sold its Polska Telefonia shares to T-Mobile Deutschland, the bankruptcy court lifted the injunction. Ultimately, Vivendi alleges only that, had Everest known about Elektrim's transfer of its Polska Telefonia shares and had T-Mobile Deutschland not issued misleading press releases over U.S. wires, "Everest would have blown the whistle on the withdrawal of the [Polish] bankruptcy petition."

[6] Most significantly, however, Vivendi Holding did not acquire Everest's Elektrim bonds and was not added as a plaintiff until after T-Mobile filed its first motion to dismiss for *forum non conveniens*, seven months after Vivendi S.A. originally had filed suit. Vivendi even concedes that Vivendi Holding acquired the Elektrim bonds for the purpose of, among others, strengthening its U.S. connections to the case.

Vivendi also stated it chose to file its action in the United States because the United States offers "proper discovery" and favorable law. The district court concluded that, because Vivendi was engaging in forum shopping, its choice of forum was entitled to little deference. A determination that a party is forum shopping turns on issues of that party's intent; it is a finding of fact to which we owe deference unless the trial court abused its discretion in making such a determination.

**[7]** We hold that such eleventh-hour efforts to strengthen connections with the United States allow the district court to reduce the deference due a plaintiff's choice of forum. As the Second Circuit explained,

> the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum— the less deference the plaintiff's choice of forum commands

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc). In this case, Vivendi admitted that Vivendi Holding acquired Everest's bonds "in part to strengthen [Vivendi's] case." Given this concession and the actions Vivendi has filed across Europe, the district court did not abuse its discretion when it concluded that Vivendi was engaging in forum shopping by filing suit in the United States.[10]

---

[10]Of course, a suspicion that a plaintiff engaged in forum shopping does not obligate a district court to reduce the deference it pays to a plaintiff's choice of forum. A competent attorney, as part of his ethical obligation to represent his client with reasonable diligence, *see* Model Rule of Profes-

**[8]** Therefore, the district court was within its discretion to grant little deference to the choice of forum of this foreign plaintiff.

## II.   Balance of factors

**[9]** When considering a motion to dismiss for *forum non conveniens*, the district court must weigh the following private interest factors: "the ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; other problems that interfere with an expeditious trial . . . ; and the ability to enforce the judgment." *Leetsch v. Freedman*, 260 F.3d 1100, 1103-04 (9th Cir. 2001) (internal quotation marks, internal citations, and alterations omitted). The district court also must consider factors affecting the public interest, such as

> (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; [and] (4) . . . the avoidance of unnecessary problems in conflicts of law.

*Id.* at 1105. Vivendi contends the district court unreasonably balanced the public and private interest factors in its analysis of the defendants' motion to dismiss.

---

sional Conduct 1.3, is obligated to consider various fora and to choose the best forum in which to file a client's complaint. However, in a case like this, where the plaintiff already had filed dozens of actions in European courts and arbitration tribunals before adding a new plaintiff, admittedly (at least in part) to justify its choice of forum, and then commenced this action in a forum unrelated to the events underlying the alleged fraud, the district court did not abuse its discretion when it gave Vivendi's choice of forum less deference based on Vivendi's complex forum shopping.

**[10]** We hold that the district court did not abuse its discretion when it concluded that the private interest factors favor dismissal. Five of the seven parties reside or have their principal places of business in Europe, and, of the twenty-two witnesses Vivendi identified, only three reside in the United States. Notably, none of these U.S.-based witnesses has information about the substance of the dispute between the parties: one has information about the corporate relationship of T-Mobile International and T-Mobile USA, one has information about a letter Vivendi sent to Deutsche Telekom after Vivendi filed its complaint in this case, and one is a group of unidentified Elektrim bondholders. Moreover, the district court concluded, based on its experience, that the ability of the court to compel unwilling witnesses to testify slightly favors dismissal because the Hague Convention's letters rogatory process, which would be necessary to produce proof for an American trial, is more cumbersome than European Commission Regulations for taking evidence within Europe, which would be necessary to produce proof for a European trial. This determination, based on the district court's experience, falls within its "sound discretion." *See Lueck*, 236 F.3d at 1143.

Vivendi contends the district court erred when it found that the location of most of the relevant documentary evidence in Europe slightly favors a European forum, because this finding ignored technological advances in document production and deposition video-conferencing, which advances can make litigation in Seattle every bit as efficient and economical as litigation in Warsaw. The district court did not ignore these advances, noting instead that, wherever the litigation ultimately takes place, the parties may choose to conduct discovery electronically. Regardless, given the presence of the vast majority of *original*, relevant documents in Europe, the district court did not err when it found this factor slightly favors dismissal.

**[11]** Similarly, the district court did not err when determining the public interest factors tipped toward dismissal. The

district court correctly observed that "any local interest in this case . . . is slight and does not exceed or even come close to the interest other [European] forums . . . have in the adjudication of this controversy." The burden on local courts and juries unconnected to the case and the costs of resolving a dispute unrelated to the forum also favor dismissal. Finally, the district court concluded its lack of familiarity with foreign law counseled in favor of dismissal. *See Piper*, 454 U.S. at 260 & n.29 (holding that while the need to apply foreign law does not warrant dismissal in itself, it is a factor favoring dismissal).

**[12]** The district court found that the balance of public and private interest factors favored dismissal. We will not reverse such a determination unless the district court clearly abused its discretion. *Ravelo Monegro*, 211 F.3d at 511. Here, the district court carefully recited the factors and considered each in turn. In dismissing Vivendi's complaint on the ground of *forum non conveniens*, the district court did not demonstrate the sort of "clear abuse of discretion" that warrants reversal. *See id.*

## Conclusion

The decision as to whether a forum is "convenient" for litigation and, perhaps, trial is fundamentally a factual determination by the district court. In this case, all of the conduct underlying Vivendi's claims occurred overseas, and all of the witnesses but three reside in Europe. Because the district court did not abuse its discretion by dismissing Vivendi's complaint on *forum non conveniens* grounds, we affirm.