**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

TOMAS MAYNAS CARIJANO; ROXANA
GARCIA DAHUA, a minor, by her
guardian Rosario Dahua Hualinga;
ROSARIO DAHUA HUALINGA,
personally and on behalf of her
minor child Roxana Garcia Dahua;
NILDA GARCIA SANDI, a minor, by
her guardian Rosalbina Hualinga
Sandi; ROSALBINA HUALINGA SANDI,
personally and on behalf of her
minor child Nilda Garcia Sandi;
ELENA MAYNAS MOZAMBITE, a
minor, by her guardian Gerardo
Maynas Hualinga; GERARDO
MAYNAS HUALINGA, personally and
on behalf of his minor child Elena
Maynas Mozambite; ALAN
CARIAJANO SANDI, a minor, by his
guardian Pedro Sandi; PEDRO
SANDI WASHINGTON, personally and
on behalf of his minor child Alan
Cariajano Sandi; ELISA HUALINGA
MAYNAS, a minor, by her
guardians Daniel Hualinga Sandi
and Andrea Maynas Cariajano;
DANIEL HUALINGA SANDI,
personally and on behalf of his
minor child Elisa Hualinga
Maynas; ANDREA MAYNAS
CARIAJANO, personally and on
behalf of her minor child Elisa

No. 08-56187

D.C. No.
2:07-cv-05068-PSG-
PJW

19449

Hualinga Maynas; CERILO
HUALINGA HUALINGA, a minor, by
his guardians Roman Hualinga
Sandi and Rosa Hualinga; ROMAN
HUALINGA SANDI, personally and
on behalf of his minor child Cerilo
Hualinga Hualinga; ROSA
HUALINGA, personally and on
behalf of her minor child Cerilo
Hualinga Hualinga; RODOLFO
MAYNAS SUAREZ, a minor, by his
guardians Horacio Maynas
Cariajano and Delmencia Suarez
Diaz; HORACIO MAYNAS CARIAJANO,
personally and on behalf of his
minor child Rodolfo Maynas
Suarez; DELMENCIA SUAREZ DIAZ,
personally and on behalf of her
minor child Rodolfo Maynas
Suarez; KATIA HUALINGA SALAS, a
minor, by her guardians Alejandro
Hualinga Chuje and Linda Salas
Pisongo; ALEJANDRO HUALINGA
CHUJE, personally and on behalf of
his minor child Katia Hualinga
Salas; LINDA SALAS PISONGO,
personally and on behalf of her
minor child Katia Hualinga Salas;
FRANCISCO PANAIGO PAIMA, a
minor, by his guardians Milton
Panaigo Diaz and Anita Paima
Cariajano; MILTON PANAIGO DIAZ,
personally and on behalf of his

minor child Francisco Panaigo Paima; ANITA PAIMA CARIAJANO, personally and on behalf of her minor child Francisco Paniago Paima; ADOLFINA GARCIA SANDI, personally and on behalf of her deceased minor child Olivio Salas Garcia; AMAZON WATCH, INC., a Montana corporation,

*Plaintiffs-Appellants,*

v.

OCCIDENTAL PETROLEUM CORPORATION, a Delaware Corporation; OCCIDENTAL PERUANA, INC., a California Corporation,

*Defendants-Appellees.*

TOMAS MAYNAS CARIJANO; ROXANA
GARCIA DAHUA, a minor, by her
guardian Rosario Dahua Hualinga;
ROSARIO DAHUA HUALINGA,
personally and on behalf of her
minor child Roxana Garcia Dahua;
NILDA GARCIA SANDI, a minor, by
her guardian Rosalbina Hualinga
Sandi; ROSALBINA HUALINGA SANDI,
personally and on behalf of her
minor child Nilda Garcia Sandi;
ELENA MAYNAS MOZAMBITE, a
minor, by her guardian Gerardo
Maynas Hualinga; GERARDO
MAYNAS HUALINGA, personally and
on behalf of his minor child Elena
Maynas Mozambite; ALAN
CARIAJANO SANDI, a minor, by his
guardian Pedro Sandi; PEDRO
SANDI WASHINGTON, personally and
on behalf of his minor child Alan
Cariajano Sandi; ELISA HUALINGA
MAYNAS, a minor, by her
guardians Daniel Hualinga Sandi
and Andrea Maynas Cariajano;
DANIEL HUALINGA SANDI,
personally and on behalf of his
minor child Elisa Hualinga
Maynas; ANDREA MAYNAS
CARIAJANO, personally and on
behalf of her minor child Elisa

No. 08-56270
D.C. No.
2:07-cv-05068-PSG-
PJW
OPINION

Hualinga Maynas; CERILO
HUALINGA HUALINGA, a minor, by
his guardians Roman Hualinga
Sandi and Rosa Hualinga; ROMAN
HUALINGA SANDI, personally and
on behalf of his minor child Cerilo
Hualinga Hualinga; ROSA
HUALINGA, personally and on
behalf of her minor child Cerilo
Hualinga Hualinga; RODOLFO
MAYNAS SUAREZ, a minor, by his
guardians Horacio Maynas
Cariajano and Delmencia Suarez
Diaz; HORACIO MAYNAS CARIAJANO,
personally and on behalf of his
minor child Rodolfo Maynas
Suarez; DELMENCIA SUAREZ DIAZ,
personally and on behalf of her
minor child Rodolfo Maynas
Suarez; KATIA HUALINGA SALAS, a
minor, by her guardians Alejandro
Hualinga Chuje and Linda Salas
Pisongo; ALEJANDRO HUALINGA
CHUJE, personally and on behalf of
his minor child Katia Hualinga
Salas; LINDA SALAS PISONGO,
personally and on behalf of her
minor child Katia Hualinga Salas;
FRANCISCO PANAIGO PAIMA, a
minor, by his guardians Milton
Panaigo Diaz and Anita Paima
Cariajano; MILTON PANAIGO DIAZ,
personally and on behalf of his

minor child Francisco Panaigo
Paima; ANITA PAIMA CARIAJANO,
personally and on behalf of her
minor child Francisco Paniago
Paima; ADOLFINA GARCIA SANDI,
personally and on behalf of her
deceased minor child Olivio Salas
Garcia; AMAZON WATCH, INC., a
Montana corporation,
                 *Plaintiffs-Appellees,*

                 v.

OCCIDENTAL PETROLEUM
CORPORATION, a Delaware
Corporation; OCCIDENTAL PERUANA,
INC., a California Corporation,
                 *Defendants-Appellants.*

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
March 3, 2010—Pasadena, California

Filed December 6, 2010

Before: Mary M. Schroeder, Pamela Ann Rymer, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Wardlaw;
Partial Concurrence and Partial Dissent by Judge Rymer

**COUNSEL**

Marco Simons (argued), Richard Herz, Earthrights International, Washington, D.C.; Paul Hoffman, Benjamin Schonbrun, Michael D. Seplow, Schonbrun Desimone Seplow Harris & Hoffman LLP, Venice, California; Natalie L. Bridgeman, Law Offices of Natalie L. Bridgeman, San Francisco, California, for the plaintiffs-appellants.

Daniel P. Collins (argued), Manuel F. Cachán, Gabriel P. Sanchez, Munger, Tolles & Olson L.L.P., Los Angeles, California; Ernest J. Getto, Michael G. Romey, Kirk A. Wilkinson, Latham & Watkins, L.L.P., Los Angeles, California, for the defendants-appellees.

**OPINION**

WARDLAW, Circuit Judge:

These cross-appeals arise from the petroleum and oil exploration operations conducted by defendant Occidental Peruana ("OxyPeru"), an indirect subsidiary of defendant Occidental Petroleum Corporation (collectively "Occidental"), along the Rio Corrientes in the northern region of Peru. Plaintiffs, 25 members of the Achuar indigenous group dependent for their existence upon the rainforest lands and waterways along the river, and Amazon Watch, a California corporation, sued

Occidental in Los Angeles County Superior Court for environmental contamination and release of hazardous waste. Although Occidental's headquarters is located in Los Angeles County, Occidental removed the suit to federal district court where it successfully moved for dismissal on the ground that Peru is a more convenient forum. Plaintiffs timely appeal the dismissal of their suit. Occidental cross-appeals from the district court's determination that its Rule 12 motion to dismiss Amazon Watch for lack of standing is moot.

Because Occidental failed to meet its burden of demonstrating that Peru is a more convenient forum, and the district court gave insufficient weight to the strong presumption in favor of a domestic plaintiff's choice of forum, the district court abused its discretion by dismissing the lawsuit without imposing mitigating conditions for the dismissal.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

We accept as true the facts alleged in the Achuar Plaintiffs' and Amazon Watch's ("Plaintiffs") First Amended Complaint ("FAC"). *See Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 691 n.3 (9th Cir. 2009); *Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 697 (2d Cir. 2009) (accepting the facts alleged in the complaint as true where the case was dismissed on *forum non conveniens* grounds without a factual hearing).

Occidental is among the largest oil and gas companies in the United States. Its Peruvian operations began in the early 1970s with the development of a pair of lots near the Ecuadorean border known as "Block 1-AB." Its subsidiary, OxyPeru, built Block 1-AB into a thriving extraction, processing, and distribution site, providing 26 percent of Peru's total historical oil production from 1972 to 2000, at which point Occidental sold its stake in Block 1-AB to the Argentine oil company Pluspetrol. The Peruvian government granted Occidental its first concession in the region in 1971; oil was found

the next year. The company built dozens of wells, a 530-kilometer network of pipelines, refineries, and separation batteries for processing crude oil, as well as roads, heliports and camps to support the operation at Block 1-AB.

The Achuar are indigenous people who have long resided along the rivers of the northern Peruvian rainforest. Block 1-AB encompasses significant portions of the Corrientes and Macusari rivers, home to several Achuar communities. The inhabitants use the rivers and their tributaries for drinking, fishing, and bathing. The region is remote, with access typically limited to small planes, helicopters, small boats, and canoes.

The complaint alleges that, during its thirty years in the Achuar territories, Occidental knowingly utilized out-of-date methods for separating crude oil that contravened United States and Peruvian law, resulting in the discharge of millions of gallons of toxic oil byproducts into the area's waterways. Achuar children and adults came into frequent contact with the contaminants by using polluted rivers and tributaries for drinking, washing and fishing. Tests have shown potentially dangerous levels of lead and cadmium in the blood of a significant number of affected individuals. Achuar Plaintiffs have reported gastrointestinal problems, kidney trouble, skin rashes, and aches and pains that they attribute to the pollution.

Plaintiffs further allege that the pollution led to decreasing yields of edible fish, and that the animals hunted by the Achuar have been turning up dead or diseased after drinking river water. The pollution has also allegedly harmed agricultural productivity and land values. Plaintiffs contend that Occidental was aware of the dangers posed by the contamination but failed to warn residents.

The complaint also details the Block 1-AB-related activities of Amazon Watch, a nonprofit Montana corporation headquartered in San Francisco, California, which began

working with the Achuar communities in 2001. Representatives of Amazon Watch traveled to the region several times in the ensuing years and helped produce a documentary film about the contamination. Amazon Watch officials also communicated with Occidental representatives in Los Angeles throughout 2005 and 2006, both at public shareholder events and in private meetings. Amazon Watch organized public relations campaigns in both Peru and Los Angeles designed to respond to statements by Occidental about its Peruvian operations.

Several dozen Achuar adults and children filed a complaint in Los Angeles County Superior Court against Occidental on May 10, 2007. Plaintiffs assert claims for common law negligence, strict liability, battery, medical monitoring, wrongful death, fraud and misrepresentation, public and private nuisance, trespass, and intentional infliction of emotional distress, as well as a violation of California's Unfair Competition Law. They seek damages, injunctive and declaratory relief, restitution, and disgorgement of profits on behalf of the individual plaintiffs and two proposed classes. On August 3, 2007, Occidental removed the action to United States District Court pursuant to 28 U.S.C. § 1332(d)(2). On September 10, 2007, the complaint was amended to name Amazon Watch as a plaintiff.

On April 15, 2008, the district court granted Occidental's motion to dismiss based on the doctrine of *forum non conveniens*. It did so without the benefit of oral argument, and while simultaneously denying Plaintiffs the opportunity to conduct limited discovery on the adequacy of Peru as an alternative forum, the current location of witnesses and evidence, and limited depositions to ascertain information about Occidental's Peruvian operations, which had ceased in 2000. In denying Plaintiffs' discovery request the district court concluded "it has enough information to sufficiently weigh the parties' interests and determine the adequacy of the foreign

forum . . . [h]aving reviewed Defendants' *forum non conveniens* motion and all related documents and exhibits."

Based on Occidental's evidence, principally the Declaration of Doctor Felipe Osterling Parodi ("Dr. Osterling"), the district court found that Peru is an adequate alternative forum and that the public and private interest factors pointed toward trial in Peru sufficiently to overcome the strong presumption of a domestic plaintiff's choice of forum. It dismissed the case, concluding that Occidental's motion to dismiss Amazon Watch's unfair competition claim was thereby rendered moot.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. §§ 1332(d)(2) & 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's order dismissing the lawsuit on the basis of *forum non conveniens* for an abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). A district court abuses its discretion by identifying an incorrect legal standard, or by applying the correct standard illogically, implausibly, or in a manner without support in inferences that may be drawn from facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc). In the *forum non conveniens* context, a "district court may abuse its discretion by relying on an erroneous view of the law, by relying on a clearly erroneous assessment of the evidence, or by striking an unreasonable balance of relevant factors." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 511 (9th Cir. 2000).

## III. DISCUSSION

**[1]** "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). Historically, the doctrine's purpose is to root out cases in

which the "open door" of broad jurisdiction and venue laws "may admit those who seek not simply justice but perhaps justice blended with some harassment," and particularly cases in which a plaintiff resorts "to a strategy of forcing the trial at a most inconvenient place for an adversary." *Id*.; *see also Piper*, 454 U.S. at 249 n.15 ("[D]ismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law."). The doctrine "is based on the inherent power of the courts to decline jurisdiction in exceptional circumstances." *Paper Operations Consultants Int'l, Ltd. v. S.S. Hong Kong Amber*, 513 F.2d 667, 670 (9th Cir. 1975).

**[2]** The doctrine of *forum non conveniens* is a drastic exercise of the court's "inherent power" because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case. The harshness of such a dismissal is especially pronounced where, as here, the district court declines to place any conditions upon its dismissal. Therefore, we have treated *forum non conveniens* as "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (quoting *Ravelo Monegro*, 211 F.3d at 514) (internal quotations omitted). The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181-82 (9th Cir. 2006) ("Juries routinely address subjects that are totally foreign to them, ranging from the foreign language of patent disputes to cases involving foreign companies, foreign cultures and foreign languages.")

**[3]** To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal. *See Dole Food Co.*, 303 F.3d at 1118. In determining whether the dis-

trict court abused its discretion in concluding that Occidental satisfied its burden, we examine: (1) the adequacy of the alternate forum; (2) the private and public factors and the deference owed a plaintiff's chosen forum; and (3) the district court's decision to dismiss Plaintiffs' case without imposing any conditions on the dismissal.

## A.   Adequacy of the Forum

**[4]** The district court abused its discretion in finding that under the unique circumstances of this case Peru provides an adequate alternative forum for Plaintiffs to pursue their claims against Occidental arising from business operations in Peru that ended 7 years previously. An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy. *See Piper*, 454 U.S. at 254 n.22; *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001) ("The foreign court's jurisdiction over the case and competency to decide the legal questions involved will also be considered. We make the determination of adequacy on a case by case basis, with the party moving for dismissal bearing the burden of proof.") (citation omitted).

### 1.   Whether Occidental is Amenable to Process in Peru

**[5]** The district court abused its discretion by accepting at face value Occidental's "stipulation and consent to jurisdiction in Peru" without considering the glaring absence of a waiver of the statute of limitations, which Occidental's own expert suggests may have run. Dismissal on the basis of *forum non conveniens* is improper when a lawsuit would be time-barred in the alternative jurisdiction. Moreover, where there is reason to believe that a defendant will seek immediate dismissal based on the foreign forum's statute of limitations, dismissal should be conditioned on waiving any statute of limitations defenses that would not be available in the domestic forum. *See Chang v. Baxter Healthcare Corp.,* 599 F.3d 728, 736 (7th Cir. 2010) ("[I]f the plaintiff's suit would be

time-barred in the alternative forum, his remedy there is inadequate . . . and in such a case dismissal on grounds of *forum non conveniens* should be denied unless the defendant agrees to waive the statute of limitations in that forum . . . ."); *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202 (4th Cir. 2009) ("[I]f the statute of limitations has expired in the alternative forum, the forum is not available, and the motion to dismiss based on *forum non conveniens* would not be appropriate."); *Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001) ("[A]n adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum.").[1]

**[6]** Occidental itself emphasizes that the Peruvian statute of limitations is tolled pending this appeal, but coyly adds "to the extent it had not already run." This caveat, together with Occidental's failure to waive the Peruvian statute of limitations, suggests that when Plaintiffs do file in Peru, Occidental intends to argue that the Peruvian statute ran before this lawsuit was filed in 2007. Dr. Osterling's declaration notes that the Peruvian statute of limitations begins to run "as of the day on which the action could have been brought." "The danger that the statute of limitations might serve to bar an action is one of the primary reasons for the limitation on the court's discretion with respect to the application of the doctrine of *forum non conveniens*." *Paper Operations*, 513 F.2d at 672-73. Therefore the district court erred by determining that

---

[1]The district court could have cured this problem by imposing appropriate conditions. We have affirmed *forum non conveniens* dismissals that addressed statute of limitations concerns by requiring waiver in the foreign forum. *See, e.g., Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009) (finding no abuse of discretion where the district court conditioned dismissal on the defendant's agreement to accept service "and waive any statute of limitations defenses"); *Paper Operations*, 513 F.2d at 673 (holding that the district court's "conditional dismissal obviously resolves this problem").

Occidental was amenable to process in Peru based on its qualified stipulation.

## 2.   Whether Peru Offers a Satisfactory Remedy

**[7]** The district court also abused its discretion in concluding on this record that Occidental met its burden of proving that Peru could offer Plaintiffs a satisfactory remedy. A "dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery," but an alternate forum offering a "clearly unsatisfactory" remedy is inadequate. *Piper*, 454 U.S. at 250, 254 n.22; *see also Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001) ("The effect of *Piper Aircraft* is that a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong."). The parties offered conflicting expert affidavits that focused on two remedial issues: (a) Peruvian law itself, both substantive and procedural; and (b) special barriers confronting indigenous plaintiffs and general corruption in the Peruvian judicial system. In assessing whether Peru afforded Plaintiffs a satisfactory remedy, the district court erroneously failed to weigh Plaintiffs' expert testimony, which unequivocally asserts that Peru provides no practical remedy at all for Plaintiffs.

### a.   Peruvian Law

**[8]** The district court failed to address critical issues raised by the parties about the Peruvian legal system. Dr. Osterling's affidavit provides an in-depth exploration of Peruvian statutory law and civil procedure, and concludes that "Peruvian law has analogies for all the substantive legal theories on which the lawsuit filed in the Los Angeles jurisdiction is based," while also offering analogous remedies. In contrast, Plaintiffs submitted expert declarations, including that of Peruvian lawyer and professor Dante Apolín Meza, who cautioned that damages fulfill a purely compensatory — not

punitive — function in Peru, and that it may be difficult for an "indeterminate group of persons (or class) such as the 'Achuar communities' " to recover.

**[9]** The district court disregarded Plaintiffs' expert and credited Dr. Osterling's account, quoting the conclusion that "Peruvian substantive norms on civil liability allow a lawsuit for damages to be processed on the facts set forth in the complaint." However, the district court did not find — and it appears it could not on this record — precisely what sort of damages would be available. Given the questions raised by Plaintiffs' expert affidavits, there is no evidence that Plaintiffs could be entitled to anything more than nominal damages, which would mean that Peru would offer "no practical remedy for the plaintiff's complained of wrong." *Lueck*, 236 F.3d at 1144.

**[10]** Moreover, the district court did not consider whether Peruvian law provides any remedy at all for Amazon Watch's California Unfair Competition claim. *See Piper*, 454 U.S. at 254 n.22 ("[D]ismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute."). By failing to address these critical questions, fairly raised in the record, the district court relied on an erroneous assessment of the evidence to determine that Peru could offer Plaintiffs a satisfactory remedy.

### b. Discrimination and Corruption

**[11]** While the district court did not err by weighing both sides' declarations and concluding that discrimination does not make Peru an inadequate forum, it overlooked important evidence related to corruption. Plaintiffs' experts described unique barriers confronting the Achuar Plaintiffs in Peru due to their ethnicity, poverty, and isolation. Peruvian lawyer and professor Wilfredo Ardito Vega characterized his nation's judiciary as "one of the governmental institutions that has not only abstained from intervening in cases of discrimination,

but it has contributed to reinforcing discrimination." He stated that, beyond such intentional bias, impoverished and geographically isolated litigants such as the Achuar Plaintiffs are frequently deterred from vindicating their rights in Peruvian courts because of logistical barriers such as filing fees and documentation requirements. The district court properly considered these arguments, but credited Dr. Osterling's more specific affidavit, which noted the availability of fee waivers for the indigent, as well as outreach programs to indigenous groups and legal doctrines that could address the barriers posed by discrimination and documentation requirements.

To demonstrate that a foreign nation is an inadequate forum due to corruption, a party must make a "powerful showing" that includes specific evidence. *Tuazon*, 433 F.3d at 1179 (noting that the court was aware of only two federal cases holding alternative forums inadequate because of corruption). Plaintiffs' expert Dr. Ardito asserted that the Peruvian judiciary suffers from "institutionalized" corruption, including widespread lobbying of judges, third party informal "intermediaries" between magistrates and parties, and the exchange of improper favors and information. He added that the problem is exacerbated by structural features of the judicial system, such as the proliferation of provisional and substitute judges who lack independence and are especially susceptible to improper influences. All of Plaintiffs' experts suggested that these institutional flaws lead to tangible harm for litigants, including inconsistent judgments and favoritism for powerful interests, which could place isolated, indigenous plaintiffs at a special disadvantage.

**[12]** The district court concluded that the evidence contained in Plaintiffs' expert affidavits was too generalized and anecdotal "to pass value judgments on the adequacy of Peru's judicial system." While Plaintiffs' evidence may fall short of a specific and "powerful" showing of corruption, the most concrete and alarming suggestions of judicial turmoil ironically come from Occidental's own evidence. Dr. Osterling

acknowledged that "[c]orruption is present in all aspects of government," including the courts where "low salaries of Judiciary personnel create a certain degree of tolerance for the phenomenon of corruption." He described admirable efforts within the Peruvian government to eliminate such corruption and bolster the integrity and professionalism of the country's courts. However, his account of the reform efforts paints a picture of a judiciary undergoing a transition that is, at best, volatile: he noted that the Peruvian Office of Judgeship Control, which investigates misconduct, requested the dismissal of 126 judges in 2007, up from 94 in 2006. The Office's investigations resulted in the temporary suspension of 86 judges in 2007, up from 36 in 2006. The Office issued 1,263 disciplinary sanctions in 2007, and admonished 473 judges and 443 court officers, while fining 84 judges and 67 court officers. Meanwhile, in the same period the Office brought 1,505 disciplinary processes that ended in exonerations and another 940 that were declared inadmissible.

The district court correctly noted that "one of the central ends of the *forum non conveniens* doctrine is to avert 'unnecessary indictments by our judges condemning the sufficiency of the courts and legal methods of other nations.' " (quoting *Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 385 (S.D.N.Y. 2001)). We agree, and do not hold that Peru is categorically an inadequate forum, nor do we make any judgment about corruption in its judicial system. However, under the unique circumstances of this case and on the specific evidence presented, the district court erred by overlooking troubling evidence of potential inadequacy proffered by Occidental, the proponent of the *forum non conveniens* dismissal.

## B.   Balance of Private and Public Interest Factors

[13]  In weighing the relevant factors, the district court consistently understated Occidental's heavy burden of showing that the Los Angeles forum results in "oppressiveness and

vexation . . . out of all proportion" to the plaintiff's convenience. *Piper*, 454 U.S. at 241 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). It properly considered Amazon Watch's status as a domestic plaintiff, but improperly afforded only reduced deference to the group's choice of forum. "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Id*. at 255.

## 1. Deference to Plaintiff's Chosen Forum

**[14]** When a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient. *Id*. at 255-56. A foreign plaintiff's choice is entitled to less deference, but "less deference is not the same thing as no deference." *Ravelo Monegro*, 211 F.3d at 514. Here the district court acknowledged that Amazon Watch "is a California plaintiff" for the purposes of its *forum non conveniens* analysis. Occidental contends that the district court erred because it should have dismissed Amazon Watch for lack of standing under both Article III of the Constitution and the statute under which it sued, California Business & Professions Code § 17200, the Unfair Competition Law. However, the district court was not required to decide the standing question before ruling on the *forum non conveniens* motion. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007).

In *Sinochem*, the Supreme Court held that federal district courts may decide *forum non conveniens* motions even though jurisdictional issues remain unresolved. *Id.* at 425. Article III standing is a species of subject matter jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss."); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a

'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."). Unlike this case, *Sinochem* involved a "textbook case for immediate *forum non conveniens* dismissal," in which a Malaysian shipping company sued a Chinese importer in the Eastern District of Pennsylvania. *Sinochem*, 549 U.S. at 435. The only connection to the U.S. forum was tenuous: cargo involved in the dispute underlying the case had been loaded at the Port of Philadelphia. *Id.* at 426. The *Sinochem* Court therefore promoted judicial economy by allowing the district court to dismiss the case without first having to address complicated jurisdictional issues. *Id.* at 425. However, the Supreme Court did not limit its holding to cases where the district court opts for dismissal. Rather it held that "a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection," including matters of personal or subject matter jurisdiction. *Id.* at 425. The Court did not dictate how district courts must respond to such pleas.

**[15]** Under *Sinochem*, then, the district court properly ruled on the *forum non conveniens* motion based on the assumption that Amazon Watch was a proper plaintiff, but without conducting a full standing analysis. Resolving that question would require consideration of both Article III and statutory standing to sue under California's Unfair Competition Law. Statutory standing is a merits question, not a jurisdictional matter like constitutional standing, which may be considered for the first time on appeal. *See Noel v. Hall*, 568 F.3d 743, 748 (9th Cir. 2009). We therefore do not reach the issue, and like the district court, we assume that Amazon Watch has standing for the purposes of the *forum non conveniens* analysis only.[2]

---

[2]We therefore deny Plaintiffs' petition to certify the statutory standing question to the California Supreme Court. *See* Cal. R. Ct. 8.548(a)(1) (limiting certification from the United States Court of Appeals to questions which "could determine the outcome of a matter pending in the requesting court"); *see also Couch v. Telescope, Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) ("[W]e invoke the certification process only after careful consideration and do not do so lightly.").

Despite operating under that assumption, the district court explained that because Amazon Watch was but one domestic plaintiff alongside 25 foreign plaintiffs, it was entitled to "only some deference." The district court cited no legal authority for the application of this vague intermediate standard of deference. Indeed, the district court's application of that standard is directly contrary to the *Piper* Court's clear instruction that when a domestic plaintiff chooses its home forum, "it is reasonable to assume that this choice is convenient," but a foreign plaintiff's choice deserves "less deference." *Piper*, 454 U.S. at 255-56. *Piper* does not in any way stand for the proposition that when both domestic and foreign plaintiffs are present, the strong presumption in favor of the domestic plaintiff's choice of forum is somehow lessened. Moreover, the district court treated Amazon Watch as merely one of 26 plaintiffs, failing to consider its status as an organizational plaintiff representing numerous individual members.

In *Vivendi*, the court afforded reduced deference to an American co-plaintiff based on an express finding that the plaintiff had engaged in forum shopping. *See Vivendi*, 586 F.3d at 694. Occidental makes a similar argument here, noting that Amazon Watch was named as a plaintiff after the lawsuit was removed to federal court, and suggesting that its presence in the case reflects a "tactical effort" to defeat a *forum non conveniens* dismissal.

A party's intent in joining a lawsuit is relevant to the balancing of the *forum non conveniens* factors only to the extent that it adds to an overall picture of an effort to take unfair advantage of an inappropriate forum. *See id*. at 695. *Vivendi* involved litigation between European companies that had no significant connection to the United States. *Id*. at 694. Vivendi admitted that it sued in the Western District of Washington "because the United States offers 'proper discovery' and favorable law." *Id*. at 694-95. After defendant T-Mobile filed a motion to dismiss on the basis of *forum non conveniens*, Vivendi added an American co-plaintiff, Vivendi Holding,

which claimed an interest in the litigation as the holder of certain bonds. However, the plaintiffs conceded that Vivendi Holding acquired the bonds after the *forum non conveniens* motion was filed with the partial motivation of strengthening its connection to the case. *Id*. at 694. Moreover, the bonds were "related only incidentally" to the fraud allegations at the heart of the litigation. *Id*.

By contrast, Amazon Watch's involvement in the subject matter of this litigation began in 2001, six years before the case was filed. The complaint includes factual allegations giving rise to claims based on events that took place in Los Angeles involving Amazon Watch, Occidental and the Achuar plaintiffs. Any tactical motivation for Amazon Watch's presence in this case is outweighed by the organization's actual long-standing involvement in the subject matter of the litigation and its assertion of actual injury resulting from defendants' alleged conduct. Moreover, Plaintiffs did not strategically choose a random or only tangentially relevant forum; they chose Occidental's home forum. And while the case concerns past operations and injury in Peru, the complaint includes claims based on decisions made in and policies emerging from Occidental's corporate headquarters in Los Angeles.

Concerns about forum shopping, while appropriately considered in the *forum non conveniens* analysis, are muted in a case such as this where Plaintiffs' chosen forum is both the defendant's home jurisdiction, and a forum with a strong connection to the subject matter of the case. *See Ravelo Monegro*, 211 F.3d at 513-14 (distinguishing *Piper*, where dismissal was granted, by noting that "plaintiffs' chosen forum is more than merely the American defendants' home forum. It is also a forum with a substantial relation to the action"); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155-56 (2d. Cir. 2005) (finding that "substantial deference" is appropriate when a plaintiff has sued a defendant in its home forum to obtain jurisdiction over the defendant); *Reid-Walen v. Han-*

*sen*, 933 F.2d 1390, 1395 (8th Cir. 1991) ("In this unusual situation, where the forum resident seeks dismissal, this fact should weigh strongly against dismissal.").

**[16]** Amazon Watch, therefore, was entitled to a strong presumption that its choice of forum was convenient. *See Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990) ("[W]hile a U.S. citizen has no absolute right to sue in a U.S. court, great deference is due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown."). The district court abused its discretion by recognizing Amazon Watch as a domestic plaintiff but then erroneously affording reduced deference to its chosen forum.

## 2.  Private Interest Factors

**[17]** The factors relating to the private interests of the litigants include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009) (quoting *Lueck*, 236 F.3d at 1145).

**[18]** Without analyzing each individual factor, the district court looked generally at the "witnesses and evidence located in Peru" versus the "witnesses and evidence in California" and concluded that the "private interest factors weigh overwhelmingly in favor of dismissal." In taking this approach, the district court neglected significant relevant evidence and failed to consider an entire factor — the enforceability of the judgment — that together weigh against dismissing this lawsuit.

### a.    Residence of the Parties

The district court focused on the fact that the contamination allegations at the heart of the complaint took place in the jungles of the Amazon rainforest, but it failed to consider the residence of all of the parties and the true nature of Plaintiffs' claims. Occidental maintains its headquarters and principal place of business in Los Angeles, California.[3] The Achuar Plaintiffs are residents of Peru, but by filing suit in California they indicated a willingness to travel to the United States for trial. Co-plaintiff Amazon Watch is a domestic corporation with its principal place of business in San Francisco, California. Although the group was incorporated in Montana in 1996, it is a registered California non-profit corporation whose main headquarters are in San Francisco. It also maintains an office in Malibu, California, within the Central District of California. Therefore, Amazon Watch is properly considered a resident of the local forum. *See Boston Telecomms.*, 588 F.3d at 1207 (concluding that the residence of the parties factor weighed against dismissal where a non-California plaintiff sued in a California court, emphasizing that the plaintiff would stand in an even "stronger position were he a California resident"). The district court failed to factor Amazon Watch's residency into its analysis.

Most of Plaintiffs' claims turn not on the physical location of the injury but on the mental state of the Occidental managers who actually made the business decisions that allegedly resulted in the injury. While the district court mentioned in passing "decisionmakers at Defendants' headquarters and witnesses with knowledge of OxyPeru's operations," it failed to

---

[3]In the personal jurisdiction context, the Supreme Court has recently clarified that "principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities," and "in practice it should normally be the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

consider how critical such locally-based evidence is to the litigation, especially given that it has now been a full decade since Occidental has been involved in day-to-day operations in Peru. Under these circumstances, with a local defendant, a local plaintiff, and the foreign plaintiffs willing to travel to the forum they chose, this factor weighs against dismissing the action in favor of a Peruvian forum.

### b.    Convenience to the Parties

The district court found it "clear [that] the cost and convenience of travel between Peru and Los Angeles supports dismissal on *forum no[n] conveniens* grounds" because even if all Peruvian witnesses consented to testify in California, airfare from Peru can cost more than $1,000. This reasoning, however, fails to consider the other side of the ledger. California is the home forum of Occidental and Amazon Watch; therefore, local litigation would save witnesses affiliated with those entities the time and expense of traveling to South America. Moreover, the most daunting logistical challenge to this litigation would likely be the extreme isolation of the Achuar territory and Block 1-AB. Travel between the region and Iquitos, the nearest sizable Peruvian city, can take days, presenting a serious obstacle regardless of whether trial takes place in Peru or California. Rather than clearly supporting dismissal, when all of the evidence is considered this is a neutral factor. *See Boston Telecomms.*, 588 F.3d at 1208 (finding the convenience factor to be neutral where similar logistical considerations would apply in either forum).

### c.    Evidentiary Considerations

The district court placed great emphasis on the fact that "[m]any of the witnesses are located in Peru and thus are beyond the reach of compulsory process" and that "Plaintiffs do not dispute that these witnesses are beyond the reach of compulsory process in the United States." The district court, however, was focused on the wrong inquiries. "[W]e have

cautioned that the focus for this private interest analysis 'should not rest on the number of witnesses . . . in each locale' but rather the court 'should evaluate the materiality and importance of the anticipated . . . witnesses' testimony and then determine their accessibility and convenience to the forum.' " *Boston Telecomms.*, 588 F.3d at 1209 (quoting *Lueck*, 236 F.3d at 1146). Other circuits have concluded that the initial question is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) ("When no witness' unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor."); *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996). This approach is consistent with *Gulf Oil*, the Supreme Court case that first established the *forum non conveniens* factors, which spoke of the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses." *Gulf Oil*, 330 U.S. at 508.

The proponent of a *forum non conveniens* dismissal is not required to identify potentially unavailable witnesses in exact detail. *See Piper*, 454 U.S. at 258. However, here Occidental has not shown, nor does it even represent, that any witness is unwilling to testify. Instead it has produced a declaration identifying categories of witnesses it intends to call who are outside of its control. The district court failed to consider countervailing evidence in the form of five declarations from named former Occidental employees who were in Peru during the relevant time period who indicated a willingness to testify in the Central District.

As far as physical evidence and other sources of proof, the district court failed to consider during the discussion of the private interest factors Occidental's transfer of Block 1-AB to Pluspetrol. That Occidental withdrew from the site in 2000 undermines its argument that evidence found today at the

physical site is much more critical to the litigation than evidence associated with Occidental's corporate headquarters, which has been in Los Angeles throughout the relevant period. Finally, the district court also failed to consider Amazon Watch in weighing these private factors. As discussed earlier, Amazon Watch's principal place of business is in California, its executives, key employees and relevant documentary evidence within its control are in California, and many of the events involving the group which form the basis for its claims occurred in the state. Therefore, when all of the evidence is properly considered, these evidentiary factors are neutral.

### d.   Enforceability of the Judgment

Most critically, the district court failed to give any consideration to whether a judgment against Occidental could be enforced in Peru. As Occidental correctly points out, California generally enforces foreign judgments, as long as they are issued by impartial tribunals that have afforded the litigants due process. *See* Cal. Civ. Proc. Code §§ 1716(a)-(d). However, the only other authority Occidental cites on the topic is *In re B-E Holdings, Inc.*, 228 B.R. 414 (Bankr. E.D. Wis. 1999), a case in which the United States Bankruptcy Court for the Eastern District of Wisconsin recognized a Peruvian judgment. As Plaintiffs note, however, the case actually demonstrates the difficulty of enforcing such an award. The Peruvian case began in 1986, ended in default judgment in 1992, and the judgment remained unsatisfied through the U.S. Bankruptcy Court litigation in 1999. *See id.* at 416. Plaintiffs also point to the U.S. State Department's Investment Climate Statement, which deems the enforcement of Peruvian court rulings "difficult to predict." U.S. Dep't of State, 2010 Investment Climate Statement — Peru (March 2010), http://www.state.gov/e/eeb/rls/othr/ics/2010/138128.htm. And Occidental's subsequent withdrawal from the operation of Block 1-AB raises questions about what assets might be available in Peru to satisfy a judgment there. *See Empresa Lineas Mariti-*

*mas Argentinas, S.A. v. Schichau-Unterweser, A.G.,* 955 F.2d 368, 375 (5th Cir. 1992) (holding that the district court erred by finding this factor favored dismissal when the defendant did not meet its burden of establishing that it had assets in the foreign jurisdiction that could satisfy a judgment).

[19] As discussed earlier, Occidental's own expert presented compelling evidence of disorder in the Peruvian judiciary. Because the district court did not require Occidental to agree that any Peruvian judgment could be enforced against it in the United States, or anywhere else it held assets, as a condition for dismissal, Occidental remains free to attack any Peruvian judgment on due process grounds under California's foreign judgments statute. The private factor of the enforceability of judgments thus weighs against dismissal.

### 3.    Public Interest Factors

[20] The public factors related to the interests of the forums include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomms.*, 588 F.3d at 1211 (quoting *Tuazon*, 433 F.3d at 1181).

#### a.    Local Interest

The district court weighed Peru's stake in a case involving its own "lands and citizens" against California's "interest in ensuring that businesses incorporated or operating within its borders abide by the law," and concluded that this factor favored dismissal. It found that a Peruvian tribunal "would be better equipped to handle" the issues raised by the case including "environmental regulation of Peruvian territory, and the allegedly tortious conduct carried out against Peruvian citizens." This conflates a forum's interest in resolving a controversy with its ability to do so. The factors regarding

familiarity with the applicable law, docket congestion, and costs and other burdens on local courts and juries are all concerned with how well-equipped a jurisdiction is to handle a case (as is the separate adequacy of the forum inquiry). The local interest factor has the different aim of determining if the forum in which the lawsuit was filed has its own identifiable interest in the litigation which can justify proceeding in spite of these burdens. *See Piper*, 454 U.S. at 261; *Tuazon*, 433 F.3d at 1182.

**[21]** In considering this factor, the district court undervalued California's significant interest in providing a forum for those harmed by the actions of its corporate citizens. California courts have repeatedly recognized the state's "interest in deciding actions against resident corporations whose conduct in this state causes injury to persons in other jurisdictions." *Stangvik v. Shiley Inc.*, 819 P.2d 14, 21 n.10 (Cal. 1991); *see also Morris v. AGFA Corp.*, 51 Cal. Rptr. 3d 301, 311 (Cal. Ct. App. 2006) (noting that in California a "corporate defendant's state of incorporation and principal place of business is presumptively a convenient forum"); *cf. Guimei v. Gen. Elec. Co.*, 91 Cal. Rptr. 3d 178, 190 (Cal. Ct. App. 2009) (finding that where defendants were not California-based corporations, the state "has little interest in keeping the litigation in this state to deter future wrongful conduct"). The district court again also failed to consider Amazon Watch. The complaint describes interactions between Amazon Watch and Occidental that took place in California and which form the basis for the Unfair Competition Law claim. There can be no question that the local interest factor weighs in favor of a California forum where a California plaintiff is suing a California defendant over conduct that took place in the state.

Therefore, although both forums have a significant interest in the litigation, the local interest factor favors neither side entirely.[4]

---

[4]There appears to be a difference of opinion about whether it is appropriate to compare the state interests, or whether this factor is solely con-

### b.    Judicial Considerations

The remaining factors all relate to the effects of hearing the case on the respective judicial systems. The district court did not abuse its discretion by concluding that the court congestion and burden factors are neutral because there is evidence that both Peruvian courts and the Central District have similarly crowded dockets. *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.,* 61 F.3d 696, 704 (9th Cir. 1995) (finding no abuse of discretion where the district court held these factors to be neutral because both forums' "judiciaries are overburdened").

The district court also properly found the choice of law factor neutral because "both parties have asserted reasonable explanations that either Peruvian or California law applies." California applies a three-part test to determine choice of law in the absence of an effective choice-of-law agreement. *See Wash. Mut. Bank v. Superior Court*, 15 P.3d 1071, 1080 (Cal. 2001). This "governmental interest approach" involves: (1) determining if the foreign law "materially differs" from California law; (2) and if so, next determining each respective state's interest in application of its law; (3) and finally, if the laws materially differ and both states have an interest in the litigation, selecting the law of the state whose interest would be "more impaired" if its law were not applied. *Id.* at 1080-81. The proponent of using foreign law has the initial burden of showing material differences. *Id.* at 1080.

---

cerned with the forum where the lawsuit was filed. *Compare Tuazon*, 433 F.3d at 1182 ("[W]ith this interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest."), *and Boston Telecomms.*, 588 F.3d at 1212 (noting that whether a state "has more of an interest than any other jurisdiction" is not relevant), *with Lueck*, 236 F.3d at 1147 (balancing the interests of the foreign and domestic jurisdictions and finding the factor tipped toward dismissal because the "local interest in this lawsuit is comparatively low"). Here, under the former view, this factor would tip against dismissal, while under the latter it is neutral. However, we find that under either approach the district court erred by undervaluing California's interest in this case.

Here the district court acknowledged that Occidental, as the foreign law proponent, presented a choice-of-law analysis that was "lacking," suggesting that it failed to meet its initial burden for the governmental interest test. However, as part of their effort to demonstrate that Peru is not an adequate alternate forum, Plaintiffs themselves argued that California law is materially different from Peruvian law. Therefore, resolving the conflict of law issue would involve a full blown analysis of the state interests and relative impairment. As the district court noted, *forum non conveniens* is designed so that courts can avoid such inquiries at this early stage. *See Piper*, 454 U.S. at 251 ("The doctrine of *forum non conveniens*, however, is designed in part to help courts avoid conducting complex exercises in comparative law."); *Lueck*, 236 F.3d at 1148 (noting that district courts need not make a choice of law determination to decide a *forum non conveniens* motion that does not involve a statute requiring venue in the United States).

## 4.   Weighing the Factors

[22] The private factors based on convenience and evidentiary concerns favor neither side, while the residence of the parties and enforceability of the judgment factors weigh against dismissal. All of the public interest factors are neutral. Taken together, the factors fail to "establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." *Piper*, 454 U.S. at 241 (quoting *Koster*, 330 U.S. at 524); *Dole Food*, 303 F.3d at 1118 ("The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country."). They also fail to outweigh the deference owed to Amazon Watch's chosen forum. Therefore, the district court abused its discretion by "striking an unreasonable balance of relevant factors." *Ravelo Monegro*, 211 F.3d at 511; *see also Boston Telecomms.*, 588 F.3d at 1212 (reversing a *forum non conveniens* dismissal because the "district court did not hold [the defendant] to his burden" of showing the foreign forum was more convenient where "[a]ll

but one of the private and public interest factors were either neutral or weighed against dismissal").

## C.   Absence of Conditions on the *Forum Non Conveniens* Dismissal

**[23]** Although the district court dismissed the case without prejudice to Plaintiffs' right to re-file in the Central District of California in the event that Occidental does not consent to personal jurisdiction in Peru, or a Peruvian court declines to assert personal jurisdiction over Occidental, it did not place any mitigating conditions on its dismissal. Under the circumstances here, this was an abuse of discretion.

Plaintiffs requested that the district court condition its dismissal by requiring that: (1) any Peruvian judgment be satisfied; (2) Occidental waive any statute of limitations defense in Peru that would not be available in California; (3) Occidental agree to comply with United States discovery rules; and (4) Occidental translate documents from English to Spanish. District courts are not required to impose conditions on *forum non conveniens* dismissals, but it is an abuse of discretion to fail to do so when "there is a justifiable reason to doubt that a party will cooperate with the foreign forum." *Leetsch*, 260 F.3d at 1104.

**[24]** Here, there is justifiable reason to suspect that Occidental will move to dismiss this lawsuit based on the Peruvian statute of limitations. And as Plaintiffs note, Occidental has agreed to waive statute of limitations defenses in the past when a *forum non conveniens* dismissal was conditioned on such waiver. *See Kinney v. Occidental Oil & Gas Corp.*, 109 F. App'x 135, 136 (9th Cir. 2004). Therefore, it was an abuse of discretion to dismiss on the basis of *forum non conveniens* without requiring Occidental to waive any statute of limitations defenses that would not be available in California.

**[25]** Similarly, the district court failed to consider evidence about the difficulty of enforcing Peruvian judgments and the

unique obstacles posed by Occidental's withdrawal from the country and the resulting uncertainty regarding its Peruvian assets. Occidental's own expert provided evidence of corruption and turmoil in the Peruvian judiciary that could become the basis for a challenge to the enforceability of a judgment based on the procedural deficiencies of a Peruvian proceeding. When there is reason to think that enforcing a judgment in a foreign country would be problematic, courts have required assurances that a defendant will satisfy any judgment as a condition to a *forum non conveniens* dismissal. *See Contact Lumber*, 918 F.2d at 1450.

**[26]** As for discovery, the district court overemphasized Peruvian geography and lost sight of the importance of California-based witnesses and evidence to resolving the claims alleged in the complaint. Plaintiffs argue that without a condition requiring Occidental to cooperate with discovery requests pursuant to the Federal Rules of Civil Procedure, they might be denied access to important domestic evidence once the case is in a Peruvian court. Where a plaintiff would "have greater access to sources of proof relevant to" its claims if trial were held in the original forum, "district courts might dismiss subject to the condition that defendant corporations agree to provide the records relevant to the plaintiff's claims." *Piper*, 454 U.S. at 257, 258 n.25; *see also Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) (holding the district court did not abuse its discretion when it conditioned dismissal on the defendant "agreeing to conduct all discovery in accordance with the Federal Rules of Civil Procedure, and voluntarily producing documents and witnesses within the United States"); *Stewart v. Dow Chemical Co.*, 865 F.2d 103, 107 (6th Cir. 1989) (finding no abuse of discretion where the trial judge conditioned dismissal on the defendant allowing "discovery of any evidence which would be discoverable under the Federal Rules of Civil Procedure, and to make witnesses under its control available to the [foreign] court").

Once again the parties offered dueling expert affidavits as to the sufficiency of Peruvian discovery procedures to ensure that California-based evidence can be obtained and witnesses procured should this case proceed in Peru. While a thorough analysis might reasonably conclude that Peru offers discovery rules that would satisfy Plaintiffs' concerns, the district court erred by rejecting this condition without addressing those legitimate concerns at all. However, the district court did not err by declining to condition the dismissal on Occidental's agreeing to translate all documents into Spanish, as Plaintiffs failed to produce sufficient evidence to show justifiable reason to doubt that such translations would otherwise be available.

## IV. CONCLUSION

Where a district court "has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Boston Telecomms.,* 588 F.3d at 1206 (citations and internal quotation marks omitted). However, when it fails to hold a party to its "burden of making a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience," *id.* at 1212 (quoting *Ravelo Monegro*, 211 F.3d at 514), or when it "fail[s] to consider relevant private and public interest factors and misconstrue[s] others," *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984), then it abuses its discretion.

Here the district court erroneously relieved Occidental of its burden of showing that Peru is an adequate alternative forum. It accepted a flawed stipulation to Peruvian jurisdiction and overlooked strong evidence, including evidence from Occidental's own expert, calling into question the ability of the Peruvian courts to satisfactorily handle this case. The district court failed to consider all relevant private and public interest factors, entirely overlooking the enforceability of

judgments factor, which weighs heavily against dismissal. It correctly assumed that Amazon Watch was a proper domestic plaintiff, but erroneously afforded reduced deference to its chosen forum and ignored the group entirely in the analysis of numerous factors. These errors led the district court to misconstrue factors that are neutral or weigh against dismissal, and to strike an unreasonable balance between the factors and the deference due a domestic plaintiff's chosen forum. Finally, the district court abused its discretion by failing to impose conditions on its dismissal that were warranted by facts in the record showing justifiable reasons to doubt Occidental's full cooperation in the foreign forum.

**[27]** Occidental had a substantial burden to persuade the district court to invoke the "exceptional tool" of *forum non conveniens* and deny Plaintiffs access to a U.S. court. *See Ravelo Monegro*, 211 F.3d at 514. Occidental failed to meet that burden, and a proper balance of all the relevant factors at this stage of proceedings clearly demonstrates that this lawsuit should proceed in the Central District of California. We therefore reverse the district court's dismissal on the basis of *forum non conveniens*. We need not reach Plaintiffs' argument that the district court abused its discretion in denying discovery before ruling on Occidental's motion. We remand this case to the district court to consider the question of Amazon Watch's standing, and for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

RYMER, Circuit Judge, concurring in part, dissenting in part:

I agree that conditions on dismissal might be appropriate. However, I would not re-analyze whether to dismiss on grounds of *forum non conveniens* from scratch, because dismissals for *forum non conveniens* may be reversed only when

there has been a clear abuse of discretion. *Creative Tech., Ltd. v. Aztech Sys. PTE, Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995). The district court considered the relevant public and private interest factors, its findings are supported in the record, and its balancing of these factors was not unreasonable. Thus, its decision deserves substantial deference. *See id.*

I

In light of that standard, Carijano has not persuaded me that the district court made a clear error of judgment when it determined that Peru is an adequate alternative forum. "[A] forum will be inadequate only where the remedy provided is 'so clearly inadequate or unsatisfactory, that it is no remedy at all.' " *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006) (quoting *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991)).

In short, Occidental is amenable to service of process in Peru, and furnished evidence that Peru provides "some remedy" for the wrong at issue. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). Occidental submitted a comprehensive affidavit from Dr. Felipe Osterling Parodi (Osterling), who has been a Peruvian law professor for more than 50 years and who has served as a law school dean, Peruvian Justice Minister, a Senator for the Republic of Peru, and President of the Peruvian Academy of Law. Osterling detailed the background of the Peruvian court system and explained the substantive claims and remedies that would be available under Peruvian law with respect to the wrongs Carijano alleges.

Although Carijano notes that Peru has no cause of action identical to his UCL claim, this is not necessary so long as that country provides some remedy for the alleged wrong. *See Lueck*, 236 F.3d at 1143 (upholding New Zealand as an adequate alternative forum even though plaintiffs were unable to maintain the exact suit they would have in a U.S. court); *Capital Currency Exch., N.V., v. Nat'l Westminster Bank PLC*,

155 F.3d 603, 610 (2d Cir. 1998) ("The availability of an adequate alternate forum does not depend on the existence of an identical cause of action in the other forum.") (quotation omitted). Osterling avers that it does. He explained that Peruvian law has analogies for all of the substantive legal theories on which the lawsuit in Los Angeles is based. The district court explicitly relied on Osterling's affidavit, which it was entitled to do. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1410-11 (9th Cir. 1983) (upholding district court's determination that Taiwan was an adequate forum when it considered the affidavits of competing experts and decided that the views of the defendant's expert were more persuasive).

In a similar vein, Carijano faults the district court for having failed to find that Amazon Watch would lack standing in Peru. But there was no evidence that Amazon Watch would *not* have standing, or would otherwise be unable to pursue its claims for injunctive and declaratory relief in that country. Osterling's affidavit indicates that actions whose objective is the defense of the environment may be brought in Peru by any person or association, even when an economic interest is not at stake.

As the Supreme Court stated in *Piper Aircraft Co. v. Reyno*, only in "rare circumstances" would a "remedy offered by the other forum [be] clearly unsatisfactory." 454 U.S. 240, 255 n.22. Here, Peru permits litigation on the subject matter of the dispute, and there is no indication Amazon Watch would be unable to pursue its claim there. The defendant need not demonstrate that the plaintiff *would succeed* in the alternative forum; Occidental merely had to show that Peru would permit litigation on the subject matter of the dispute. *Id.*

Because a forum will only be deemed inadequate in "rare circumstances," once a defendant has demonstrated he is amenable to process and "some remedy" exists for the alleged wrong, "[a] litigant asserting inadequacy or delay must make a powerful showing." *Tuazon*, 433 F.3d at 1179. Carijano's

claims center on whether the law in Peru would be unpredictable, corruption in the judicial system, and discrimination against indigenous people.

Carijano maintains that the district court failed to support the weight it gave to unpredictability of the law as a factor. However, the court was persuaded by Osterling's affidavit that, although Peru is a civil law country, precedent is respected in the overwhelming majority of cases.

After analyzing Carijano's purported evidence of corruption, the district court concluded that it falls short of the "powerful showing" necessary to defeat a *forum non conveniens* motion. *See Tuazon*, 433 F.3d at 1179 ("[T]he argument that the alternative forum is too corrupt does not enjoy a particularly impressive track record.") (citations and quotation and alteration marks omitted). The proof here is neither "specific" nor "sordid." *Id.* (contrasting the proof under review with *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078 (S.D. Fla. 1997)). The district court did not overlook the evidence presented; it just concluded that the evidence consisted of unsupported allegations of corruption that did not counsel in favor of Carijano. Carijano has not shown that the district court relied on either an erroneous view of the law or on a "clearly erroneous assessment of the evidence" in holding that Carijano's evidence of corruption was insufficient to render Peru an inadequate alternative forum. *See K.V. Mart Co. v. United Food & Commercial Workers Int'l Union, Local 324*, 173 F.3d 1221, 1223 (9th Cir. 1999) (quotation omitted).

Nor did the district court believe that claims of discrimination can never render a forum inadequate, as Carijano submits; rather, it simply held that Carijano's conclusory allegations and claims of discrimination were not sufficient to render a Peruvian forum inadequate. Although Carijano argues that some plaintiffs lacked identity papers necessary to bring suit and would be unable to afford filing fees, the district court credited Osterling's opinion that Peru had taken

substantial steps to protect indigenous rights, including waiving filing fees and allowing plaintiffs to bring suit if they demonstrate their inability to obtain identity papers. *Altmann v. Austria*, 317 F.3d 954, 972-73 (9th Cir. 2002), *aff'd on other grounds*, 541 U.S. 677 (2004) (observing that the "mere existence of filing fees, which are required in many civil law countries, does not render the forum inadequate as a matter of law.").

Carijano further contends that Occidental's contract clauses that explicitly avoid Peruvian courts (like arbitration and forum selection clauses) demonstrate that Peru is an inadequate forum. However, available evidence demonstrates that OxyPeru actually used forum selection clauses *favoring* Peru in the past, *see Sudduth v. Occidental Peruana, Inc.*, 70 F.Supp.2d 691, 694 (E.D. Tex. 1999), and OxyPeru has been sued many times in Peruvian courts.

II

I cannot say that the district court abused its discretion in weighing the public and private interest factors. It took into account that 25 out of the 26 plaintiffs are Peruvian and that Amazon Watch is only one plaintiff on one out of the 12 causes of action. Amazon Watch was not originally a plaintiff in California state court, having been added only after the Peruvian plaintiffs learned that Occidental was going to move for dismissal based on *forum non conveniens*. The court could find that these circumstances lessen the deference due to the plaintiffs' choice of forum.

The district court could also find, as it did, that the facts of the case center primarily on Peruvian lands and Peruvian people. It found that many witnesses, including family members and community leaders, physicians, and consultants, are beyond the reach of compulsory process in the United States. Carijano asserts the court abused its discretion by not specifically stating which witnesses would be unwilling to travel to

the United States, but it can be "difficult to identify" specific individuals when many witnesses "are located beyond the reach of compulsory process." *Piper Aircraft*, 454 U.S. at 258. Here, as in *Lueck*, it appears that most of the evidence in the United States would be under the control of Occidental (or alternatively, Amazon Watch), and therefore could be produced no matter what the forum. *Lueck*, 236 F.3d at 1146-47 (noting that private factors favored dismissal where evidence in the United States was under both parties' control, and evidence in New Zealand could not be summoned to the United States). Finally, the district court's balancing is supported by evidence that a trip from the Achuar territory to a Peruvian city is shorter and less costly than that trip followed by a 16-20 hour flight to Los Angeles.

The district court considered the strong interest of both Peru and California in this dispute, but weighted Peru's more heavily given that the suit involves Peruvian land and citizens. This is not a clearly erroneous assessment as both the alleged tort, and injury, occurred there.

## III

Carijano suggests that more discovery may have mattered, but has not made a clear showing of actual and substantial prejudice sufficient to demonstrate the district court abused its discretion by denying additional discovery. Carijano simply argues that the parties produced contradictory evidence and speculates that additional discovery might have helped its case. But Carijano's extensive recitation of the evidence it presented in district court demonstrates the court did have enough information to balance the parties' interests. Even when it's possible that discovery might have provided more detail, a district court does not abuse is discretion in denying discovery if the parties have provided "enough information to enable the District Court to balance the parties' interests." *Cheng*, 708 F.2d at 1412 (quoting *Piper Aircraft*, 454 U.S. at 258).

IV

While conditions on dismissal are generally not necessary in a *forum non conveniens* dismissal, they may be necessary to ensure that the defendant does not defeat the adequacy of a foreign forum. *Leetsch v. Freedman*, 260 F.3d 1100, 1104 (9th Cir. 2001). Conditions such as accepting service, submitting to the jurisdiction, waiving the statute of limitations, making discovery, and agreeing to enforceability of the judgment may be appropriate here. I would, therefore, remand for the court specifically to consider whether its dismissal should be conditioned. Otherwise, I would affirm.